**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:24-cv-20684-KMM**

NOACH NEWMAN, ADIN GESS,
MAYA PARIZER, NATALIE SANANDAJI
and YONI DILLER,

     Plaintiffs,

v.

THE ASSOCIATED PRESS,

     Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

BALLARD SPAHR LLP

Charles D. Tobin (Fla. Bar No. 816345)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com

R. Stephen Stigall (*pro hac vice*)
Elizabeth Seidlin-Bernstein (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
stigalls@ballardspahr.com
seidline@ballardspahr.com

*Attorneys for Defendant The Associated Press*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND..................................................................................................... 3

ARGUMENT .............................................................................................................................. 6

I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FEDERAL
       ATA OR ITS FLORIDA COUNTERPART ................................................................. 6

       A.     The Complaint fails to state a claim for aiding and abetting under the
              Federal ATA and JASTA (Count I)..................................................................... 6

              1.     Plaintiffs have not pled, and cannot plead or prove, that The
                     AP knowingly assisted Hamas in carrying out the October 7
                     attack ......................................................................................................... 7

              2.     Plaintiffs have not pled, and cannot plead or prove, that The
                     AP provided substantial assistance to Hamas in the October 7
                     attack ......................................................................................................... 8

       B.     The Complaint fails to state a claim for conspiracy under the Federal
              ATA and JASTA (Count II) ................................................................................ 10

       C.     The Complaint fails to state a claim for direct liability under the
              Federal ATA (Counts III and IV) ...................................................................... 11

              1.     Plaintiffs have not pled, and cannot plead or prove, that The
                     AP acted with the requisite scienter ........................................................ 11

              2.     Plaintiffs have not pled, and cannot plead or prove, that The
                     AP committed an act of international terrorism ........................................ 13

              3.     Plaintiffs have not pled, and cannot plead or prove, that The
                     AP proximately caused their alleged injuries .......................................... 15

       D.     The Complaint fails to state a claim under Florida's ATA (Count VI) ............. 17

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT
       INFLICTION OF EMOTIONAL DISTRESS (Count V) ................................................. 17

III.     EVEN IF THE COURT WERE TO DISAGREE WITH ALL OF THE
FOREGOING, PLAINTIFFS' CLAIMS NEVERTHELESS SHOULD BE
DISMISSED BECAUSE THE AP'S JOURNALISM IS FULLY
PROTECTED BY THE FIRST AMENDMENT ..............................................................18

CONCLUSION......................................................................................................................22

REQUEST FOR HEARING....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Dental Association v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .............................................................................................3

*Associated Press v. United States*,
   326 U.S. 1 (1945).................................................................................................................18

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001).......................................................................................................18, 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................14

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)..............................................................................................7

*Boim v. Holy Land Foundation for Relief & Development*,
   549 F.3d 685 (7th Cir. 2008) .............................................................................................14

*Bowens v. Superintendent of Miami South Beach Police Department*,
   557 F. App'x 857 (11th Cir. 2014) ....................................................................................18

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)............................................................................................................19

*Buckley v. Valeo*,
   424 U.S. 1 (1976).........................................................................................................19, 20

*In re Chiquita Brands International, Inc.*,
   284 F. Supp. 3d 1284 (S.D. Fla. 2018) ...................................................................11, 12, 15

*Colon v. Twitter, Inc.*,
   14 F.4th 1213 (11th Cir. 2021) ....................................................................................15, 17

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   6 F.4th 1247 (11th Cir. 2021) ............................................................................................20

*Counterman v. Colorado*,
   600 U.S. 66 (2023)......................................................................................................19, 20

*Crosby v. Twitter, Inc.*,
   921 F.3d 617 (6th Cir. 2019) .............................................................................................18

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ...........................................................................15, 16

*Freeman v. HSBC Holdings PLC*,
57 F.4th 66 (2d Cir. 2023) ......................................................................................10

*Harte-Hanks Communications, Inc. v. Connaughton*,
491 U.S. 657 (1989) ................................................................................................19

*Hess v. Indiana*,
414 U.S. 105 (1973) ................................................................................................19

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ......................................................................................11, 12, 20

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) ..................................................................................................18

*Kaplan v. Al Jazeera*,
2011 WL 2314783 (S.D.N.Y. June 7, 2011) ................................................13, 14, 16

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ..................................................................................10

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) ................................................................................................19

*NetChoice, LLC v. Attorney General, Fla.*,
34 F.4th 1196 (11th Cir. 2022) ...............................................................................22

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ................................................................................................19

*Ofisi v. BNP Paribas, S.A.*,
77 F.4th 667 (D.C. Cir. 2023) ...........................................................................15, 16

*Owens v. BNP Paribas, S.A.*,
897 F.3d 266 (D.C. Cir. 2018) ................................................................................15

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ................................................................................................18

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)......................................................................................15

*Snyder v. Phelps*,
562 U.S. 443 (2011)................................................................................................18

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) .................................................................................................19

*Stansell v. BGP, Inc.*,
  2011 WL 1296881 (M.D. Fla. Mar. 31, 2011) ........................................................14

*Talley v. Time, Inc.*,
  923 F.3d 878 (10th Cir. 2019) ..................................................................................19

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 118 (2d Cir. 2013)......................................................................................16

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)........................................................................................... *passim*

*United States v. Rosen*,
  445 F. Supp. 2d 602 (E.D. Va. 2006) .......................................................................20

**Constitutional Provisions and Statutes**

U.S. Const. amend. I ................................................................................................ *passim*

18 U.S.C. § 2331 ................................................................................................................13, 17

18 U.S.C. § 2333 ........................................................................................................... *passim*

18 U.S.C. § 2339A .............................................................................................................11, 12

18 U.S.C. § 2339B .............................................................................................................11, 12

Fla. Stat. § 772.13(1).........................................................................................................17

Defendant The Associated Press hereby moves to dismiss Plaintiffs' Complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and under the First Amendment, and in support of this Motion states as follows:

## PRELIMINARY STATEMENT

October 7, 2023, was a horrific day in the State of Israel:  Hamas-led militants breached the border that separates Gaza and Israel and launched a massive attack against Israel, committing widespread atrocities and terrorizing the country.  Hamas killed more than 1,200 people during the attack, most of them civilians, and kidnapped 250 more.  The carnage, destruction, and devastation were terrible – and outrageous.

On that day, journalists for The Associated Press ("The AP") bravely did what The AP's reporters have always done since the news organization's founding 180 years ago: gather and publish timely, accurate, and factual news of the unfolding events in order to keep a concerned world informed of the attack.  The subject matter of those news accounts undoubtedly was horrifying.  But that is the role of a free and independent press – to document such atrocities, without fear or favor; to show what is actually happening on the ground; and to ensure that the public is informed in real time.  In the words of Walter Cronkite, journalists' "job is only to hold up the mirror – to tell and show the public what has happened."[1]

In this lawsuit, the five Plaintiffs erroneously attempt to hold The AP liable for the emotional distress they suffered as a result of the October 7 attack.  Plaintiffs base their claims under the Federal Anti-Terrorism Act ("ATA") and state law on The AP's publication of accurate photographs of the attack taken by Palestinian freelance photographers.  The AP has

---

[1] *See* Todd Leopold, *Former CBS anchor 'Uncle Walter' Cronkite dead at 92*, CNN (July 18, 2009), http://www.cnn.com/2009/US/07/17/walter.cronkite.dead/.

profound sympathy for Plaintiffs' suffering.  There is, however, no legal basis on which to hold The AP liable for the atrocities committed by Hamas that day.

Plaintiffs' claim for aiding and abetting terrorism under the Federal ATA should be dismissed because the factual allegations in the Complaint fall far short of establishing that The AP provided knowing and substantial assistance to Hamas by publishing the photographs. The claim for conspiracy under the Federal ATA likewise fails because nowhere do Plaintiffs allege (nor could they in good faith allege) that The AP entered into any agreement with Hamas to commit a terrorist act.  To the contrary, reporting breaking news on matters of immense public concern such as this vicious attack furnishes the public with crucial information.  Plaintiffs' claims for direct liability under the Federal ATA and its Florida counterpart should also be dismissed because the Complaint does not plausibly plead that The AP acted with a culpable state of mind, that it committed an act of terrorism, or that it proximately caused Plaintiffs' emotional distress.  Similarly, Plaintiffs' claim for negligent infliction of emotional distress cannot stand because there are no pleaded facts that could demonstrate proximate cause.

Most importantly, even if Plaintiffs' causes of action were otherwise legally viable, the unprecedented application of them to The AP's news reporting would violate the First Amendment.  The AP is not aware of any case in which a court has permitted analogous claims to proceed against a news organization, and for good reason:  Doing so inevitably would chill protected speech and deprive the public of essential information about world events.  The pain and suffering experienced by Plaintiffs as a result of the October 7 attack, grievous though it may be, cannot justify abandoning our Nation's longstanding commitment to protect the publication of truthful information on matters of public concern.  The Complaint therefore should be dismissed with prejudice for failure to state a claim against The AP.

## FACTUAL BACKGROUND[2]

On the morning of October 7, 2023, large numbers of Hamas-led militants crossed the border from Gaza into Israel and perpetrated a deadly attack on civilians at the Nova music festival, Kibbutz Holit, and other sites.  Compl. ¶¶ 1, 14, 16.  All told, Hamas killed over 1,200 people, injured over 6,900 people, and kidnapped 239 people that day.  *Id.*  ¶ 1.

According to the Complaint, Plaintiffs experienced "severe mental anguish, extreme emotional pain, and suffering" as a result of the October 7 attack.  *Id.* ¶¶ 14-18.  Yoni Diller, Natalie Sanandaji, and Maya Parizer attended the Nova music festival and witnessed the attack firsthand, eventually escaping to safety.  *Id.* ¶¶ 15, 17, 18.  Hamas killed Noach Newman's brother at the same festival.  *Id.* ¶ 14.  Adin Gess was evacuated from his home in Kibbutz Holit and lost members of his community to the attack.  *Id.* ¶ 16.

The AP is a not-for-profit news agency that reports on breaking news events around the world.  *Id.* ¶ 19.  Like other major news organizations, The AP reported on the October 7 attack as it unfolded, including by publishing photos of the conduct of Hamas militants.  *Id.* ¶ 3.  Palestinian freelance photographers Hassan Eslaiah, Yousef Masoud, Ali Mahmud, and Hatem Ali (collectively, the "Photographers") took some of the photos The AP published.  *Id.*  Plaintiffs do not contend that any of these photos were inaccurate.  *See id.* ¶¶ 65-70.

According to Plaintiffs, the freelance Photographers "were longstanding Hamas affiliates and full participants in the terrorist attack that they were also documenting."  *Id.* ¶ 4.  In support of this claim, Plaintiffs rely heavily on personal social media posts by one of the photographers,

---

[2] For purposes of this motion only, The AP accepts Plaintiffs' factual allegations as true.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (court considering motion to dismiss must assume well-pleaded factual allegations are true).  Wholly conclusory allegations, on the other hand, are not entitled to an assumption of truth and should be disregarded.  *Id.*

Eslaiah, which they allege suggest that he sympathized with Hamas and was on "friendly terms" with its members. *Id.* ¶¶ 31, 33, 41-45, 54, 61-62 & Exs. A, B.  Plaintiffs also speculate that Eslaiah and the other freelance Photographers could not have safely gained access to photograph the October 7 attack without press credentials unless they had Hamas affiliations, *id.* ¶¶ 46, 50, 55, 64-65, 67-69, and that the Photographers must have known about the attack in advance because they "arrived at roughly the same time as the initial Hamas terrorists who breached entry into the State of Israel," *id.* ¶ 38.  In addition, Plaintiffs allege that the freelance Photographers returned to Gaza alongside the Hamas militants. *Id.* ¶ 59.

Plaintiffs do not allege that the freelance Photographers themselves killed or injured anyone during Hamas' violent attack October 7.  They also do not allege that The AP knew about the October 7 attack in advance or wanted to help bring it about – to the contrary, Plaintiffs recognize that The AP's motivation in publishing the images by the freelance Photographers was to report breaking news. *See, e.g.*, Compl. ¶ 80 (The AP worked with the Photographers "for content"); *id.* ¶ 82 (The AP sought to "obtain[] access to footage that is difficult to secure"); *id.* ¶ 90 (The AP's objective was "to generate content for their news media vehicle").

Nor do Plaintiffs plead any facts that would establish The AP had actual knowledge that publishing the photographs would in some way further the attack.  Instead, Plaintiffs maintain that The AP "knew, or at the very least should have known, through simple due diligence," that the freelance Photographers were affiliated with Hamas and participating in the October 7 attack. Compl. ¶ 4.  The centerpiece of Plaintiffs' vague theory is that, more than five years ago, an unnamed "watchdog organization" sent communications, attached to the Complaint as Composite Exhibit B, that allegedly put The AP on notice of Eslaiah's purported ties to Hamas. *Id.* ¶ 33 & Ex. B.  While difficult to read, the communications appear to consist of Arabic-

language Twitter posts by Eslaiah – called "Hassan Isleih" in the communications – accompanied by the organization's English translations and commentary on the posts. *Id.* Ex. B. The Complaint does not explain the context or specify how these communications were conveyed to The AP, nor does it name the alleged recipient.

Plaintiffs claim that The AP's publication of images by the freelance Photographers contributed to the October 7 attack in the following ways:  (1) the Photographers' alleged entry into Israel increased the "logistical and tactical" burden on the country in responding to the attack, Compl. ¶ 75, (2) the Photographers' "presence and encouragement increased the terror" felt by Israeli civilians, *id.* ¶ 76, (3) the Photographers, and by extension Hamas, received a monetary benefit from The AP's payments for the photographs, *id.* ¶¶ 80, 87, and (4) The AP's "imprimatur" on the freelance Photographers and their images had propaganda value for Hamas, which "galvanized the attack" and helped Hamas gain public support internationally, *id.* ¶¶ 77, 81, 84, 86, 88-91.

In this action, Plaintiffs assert several implausible claims under the Federal Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), and two equally implausible state-law claims.  In Count I, Plaintiffs claim that The AP aided and abetted an act of international terrorism under the Federal ATA and JASTA.  In Count II, they claim that The AP conspired to commit an act of international terrorism under the Federal ATA and JASTA.  In Counts III and IV, Plaintiffs claim that The AP is directly liable for an act of international terrorism under the Federal ATA because it allegedly provided material support to Hamas.  In Count V, Plaintiffs assert a state-law claim for negligent infliction of emotional distress.  Finally, in Count VI, Plaintiffs claim that The AP is directly liable for an act of terrorism under Florida's version of the ATA.

**ARGUMENT**

I.   **THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FEDERAL ATA OR ITS FLORIDA COUNTERPART.**

The Federal ATA permits United States nationals to sue for injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). Congress enacted JASTA in 2016 "to provide for a form of secondary civil liability" under the ATA. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023). The statute now provides a cause of action against "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2).

In this case, Plaintiffs assert four different claims under the Federal ATA as amended by JASTA. Two allege secondary liability – aiding and abetting (Count I) and conspiracy (Count II) – and two allege direct liability on the theory that The AP provided material support to Hamas in violation of 18 U.S.C. § 2339A (Count III) and 18 U.S.C. § 2339B (Count IV). Plaintiffs also assert a direct liability claim under the Florida ATA, Fla. Stat. § 772.13 (Count VI). For the reasons set forth below, each of these claims fails as a matter of law.

A.   **The Complaint fails to state a claim for aiding and abetting under the Federal ATA and JASTA (Count I).**

An aiding and abetting claim under Section 2333(d)(2) of the ATA requires "that the defendant have given knowing and substantial assistance to the primary tortfeasor." *Taamneh*, 598 U.S. at 491. The "twin requirements" of scienter and substantial assistance work "in tandem, with a lesser showing of one demanding a greater showing of the other." *Id.* at 491-92; *see also id.* at 503-04 ("the knowledge and substantial assistance components should be considered relative to one another as part of a single inquiry designed to capture conscious and culpable conduct"). Here, the allegations in the Complaint do not satisfy either requirement.

1.     *Plaintiffs have not pled, and cannot plead or prove, that The AP knowingly assisted Hamas in carrying out the October 7 attack.*

To plead scienter sufficiently for their aiding and abetting claim, Plaintiffs must point to facts that would show The AP "intentionally associated" itself with Hamas' operations in conducting the October 7 attack, *Taamneh*, 598 U.S. at 502, "participated in [the attack] as something that [it] wished to bring about, or sought by [its] action to make [the attack] succeed," *id.* at 498 (cleaned up). *See also id.* at 493 (statute requires "conscious, voluntary, and culpable participation"). Put differently, Plaintiffs must show that The AP took "some affirmative act with the intent of facilitating" the attack, such as "inducing, encouraging, soliciting, or advising" its commission. *Id.* at 490. None of the factual allegations in the Complaint come close to the high degree of scienter required here.

Plaintiffs make no allegation that The AP knew about the October 7 attack in advance. They also make no allegation that The AP wished to bring about the attack or to help it succeed by publishing photos of it. Plaintiffs' contention that The AP was on notice of the freelance Photographers' alleged affiliations with Hamas, Compl. ¶ 72, even if accepted as true,[3] would not be enough to prove that the AP employees who selected the images by the freelance Photographers knowingly assisted with the October 7 attack. *See Taamneh*, 598 U.S. at 501-02 (social media platforms' alleged inaction after becoming aware that ISIS was using their services "for illicit ends" did not establish requisite scienter for aiding and abetting claim); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 869 (D.C. Cir. 2022) (even if defendant was aware of

---

[3] Plaintiffs' factual allegations regarding the freelance Photographers' supposed ties to Hamas focus almost exclusively on Eslaiah's social media posts, and they do not establish that The AP was actually aware of those posts in advance of October 7. *See* Compl. ¶¶ 31, 33, 41-45, 54, 61-62. With respect to the other Photographers, Plaintiffs allege only that they were able to take photos in close proximity to Hamas during the October 7 attack, *id.* ¶¶ 55, 64-65, 67-69, which does not by itself suggest any affiliation with Hamas.

bank's connections to al-Qaeda, plaintiff failed to allege that those connections were so close that defendant "had to be aware it was assuming a role in al-Qaeda's terrorist activities by working with" bank). And, while providing "pervasive" and "systemic" assistance to a terrorist organization might in an extreme case establish a defendant's intent to aid and abet "every single" attack by the organization, *Taamneh*, 598 U.S. at 501-02, the Complaint here does not come close to pleading The AP provided that type of extensive assistance to Hamas.

Without factual allegations that would establish The AP's intentional participation in and support for the October 7 attack, Plaintiffs cannot sustain their aiding and abetting claim, and it should be dismissed on that basis alone.

2. *Plaintiffs have not pled, and cannot plead or prove, that The AP provided substantial assistance to Hamas in the October 7 attack.*

Plaintiffs also are required but fail to plead facts that would show The AP provided substantial assistance to Hamas in carrying out the October 7 attack. *Taamneh,* 598 U.S. at 494-95. It is not sufficient to allege that The AP somehow assisted Hamas generally by publishing news. *Id.* at 494. Rather, Plaintiffs must allege that The AP assisted with the October 7 attack in particular, and that its assistance was substantial – in other words, that there is a "nexus" between The AP's conduct and the act of terrorism. *Id.* at 495. The AP's publication of truthful photos for news reporting purposes cannot plausibly be considered assistance of any kind – let alone the substantial assistance this claim requires – in perpetrating the October 7 attack.

First, given the sheer number of Hamas militants involved in the attack, Compl. ¶ 1, Plaintiffs' allegations that the freelance Photographers' presence on the scene increased Israel's burden in responding to the attack as well as the terror felt by Israeli citizens do not plausibly plead substantial assistance on the part of The AP. *Id.* ¶¶ 75, 76. There is no allegation that the Photographers, as freelancers, were even taking photos at The AP's request. *Id.* ¶ 3 (alleging

that "[s]everal major media outlets posted real-time photographs of the atrocities being committed" and that Photographers "sometimes worked for AP"); *id.* ¶ 78 (alleging only that Photographers had an "expectation" that The AP would pay for their photos). At most, the Complaint alleges the same type of arms-length relationship between The AP and the Photographers as the Supreme Court has held is not actionable. *See Taamneh*, 598 U.S. at 498-99 (social media platforms did not provide substantial assistance by treating content from ISIS the same as it would treat content from any other user); *id.* at 504 (no substantial assistance when "ISIS' ability to benefit from these platforms was merely incidental to defendants' services").

Second, Plaintiffs' claim of a monetary benefit to Hamas through The AP's alleged payments to the freelance Photographers, Compl. ¶¶ 80, 87, is far too vague and indirect to demonstrate the requisite substantial assistance in the October 7 attack. *See Taamneh*, 598 U.S. at 505-06 (allegations "that Google reviewed and approved ISIS videos on YouTube as part of its revenue-sharing system and thereby shared advertising revenue with ISIS," without any allegations about "about the amount of money that Google supposedly shared," did not plausibly plead substantial assistance).

Finally, Plaintiffs' allegations that the photos "galvanized" the attack because Hamas might have used them for propaganda, Compl ¶¶ 77, 81, 84, 86, 88-91, also fail to establish substantial assistance. Setting aside the First Amendment implications of this argument, *see infra* Section III, it is highly implausible that The AP's publication of photos had a material effect on the outcome of the October 7 attack. Indeed, as Plaintiffs allege, Hamas militants were themselves recording the attack in real time and posting on social media, and other major media organizations also contemporaneously published photos of the attack. *Id.* ¶¶ 2-3. Plaintiffs

offer no factual allegations to support their conclusion that the photos published by The AP made a substantial difference in the outcome of the attack.

Such alleged "tangential assistance" to Hamas in carrying out the October 7 attack is not the kind of "truly culpable conduct" Section 2333(d)(2) was meant to reach. *Taamneh*, 598 U.S. at 488. To the extent the attenuated assistance The AP allegedly provided can form the basis for an aiding and abetting claim at all, Plaintiffs must make a very high showing of scienter. *See id.* at 491-92, 502-503. As discussed in Section I.A.1 above, they have not pled such scienter. Thus, Plaintiffs' aiding and abetting claim against The AP (Count I) should be dismissed.

**B.     The Complaint fails to state a claim for conspiracy under the Federal ATA and JASTA (Count II).**

Plaintiffs' conspiracy claim under Section 2333(d)(2) also is deficient. To plead a conspiracy claim, the complaint must allege that the co-conspirators were actively pursuing the same illegal objective, *i.e.*, committing a terrorist act. *See Taamneh*, 598 U.S. at 490 (plaintiff must point to an "agreement with the primary wrongdoer to commit wrongful acts"); *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 80 (2d Cir. 2023) (banks not liable for conspiracy "[i]n the absence of any allegation that" they "engaged in a common pursuit" with terrorist groups); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (same).

Nowhere in the Complaint do Plaintiffs allege that The AP entered into an agreement with the goal of committing a terrorist act, and there is no factual support for such a claim. *See, e.g.*, Compl. ¶¶ 109-111. Simply agreeing to make a customary payment to the freelance Photographers in exchange for the use of their photos is not enough, regardless of the Photographers' alleged ties to Hamas or The AP's alleged notice of those ties. *See Kemper*, 911 F.3d at 395 ("A person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that person knows that his or her actions might

somehow be furthering that conspiracy.").  As Plaintiffs acknowledge, The AP's purpose in

obtaining the photos was news reporting, not terrorism.  Compl. ¶¶ 80, 82, 90.  Thus, Plaintiffs'

conspiracy claim against The AP also should be dismissed.

> ### C.    The Complaint fails to state a claim for direct liability under the Federal ATA (Counts III and IV).

In addition to their secondary liability claims, Plaintiffs assert two direct liability claims

under the Federal ATA, which permits a civil cause of action for injury "by reason of an act of

international terrorism."  18 U.S.C. § 2333(a).  Again, nowhere does the Complaint allege that

The AP itself committed an act of terrorism on October 7.  Instead, Plaintiffs' theory is that

The AP provided material support to Hamas in violation of 18 U.S.C. § 2339A and 18 U.S.C.

§ 2339B.  *See* Counts III and IV.  Section 2339A makes it unlawful to provide "material support

or resources" to terrorists "knowing or intending that they are to be used in preparation for, or in

carrying out," terrorist acts.  Section 2339B makes it unlawful to "knowingly provide[] material

support or resources to a foreign terrorist organization."  Here too, Plaintiffs have not alleged the

requisite scienter for either of these provisions, nor can they show that The AP committed "an

act of international terrorism" or proximately caused their alleged injuries.  On each of these

independent grounds, the direct liability claims should be dismissed.

> 1.    *Plaintiffs have not pled, and cannot plead or prove, that The AP acted with the requisite scienter.*

The scienter requirement for material support under Section 2339A differs from that

under Section 2339B, *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 17 (2010), but the

factual allegations in the Complaint do not meet either standard.

Under Section 2339A, Plaintiffs must establish that The AP provided material support to

Hamas "knowing or intending" that it would be used for purposes of a terrorist act.  *See In re*

*Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1309 (S.D. Fla. 2018) (Section 2339A

11

"criminalizes material support *only* where the defendant acts with actual knowledge or intent that the support will be used to prepare for, or carry out, certain terrorism-related crimes" (emphasis added)). This mental state requirement "extends both to the support itself, *and* to the underlying purposes for which the support is given." *Id.* Dispositively, Plaintiffs do not allege that The AP knowingly gave money directly to Hamas; they allege only that The AP should have known the Photographers were Hamas affiliates due to Eslaiah's social media posts and the Photographers' presence during the October 7 attack. Thus, both components of knowledge for a direct liability claim based on Section 2339A are missing: The Complaint does not plead that The AP actually knew it was giving money to Hamas, nor does it plead that The AP actually knew the money would be used for a terrorist act. Moreover, as discussed in Section I.A.1, Plaintiffs do not allege that The AP intended to further a terrorist act.

Separately, under Section 2339B, Plaintiffs must establish that The AP "knowingly provide[d] material support or resources to a foreign terrorist organization." The Supreme Court has read this provision stringently, requiring that a defendant act "under the direction of, or in coordination with" a group that it "knows to be" a terrorist organization. *Humanitarian L. Project*, 561 U.S. at 26. Indeed, Congress clearly anticipated that a claimant under this statute might bring an impermissible action arising from protected expressive conduct, as Plaintiffs do here, and it included a carve-out in the statute: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i).

Simply put, independent, First Amendment-protected activities that incidentally result in a benefit to the terrorist organization do not meet the scienter requirement. *Humanitarian L. Project*, 561 U.S. at 36. Here, there is no allegation in the Complaint that suggests The AP

knowingly acted under the direction of, or in coordination with, Hamas when it published newsworthy, truthful photographs of the October 7 attack.  At bottom, news reporting "is a far cry from donating money to a terrorist organization."  *Kaplan v. Al Jazeera*, 2011 WL 2314783, at \*6 (S.D.N.Y. June 7, 2011).

Because the factual allegations in the Complaint do not satisfy the scienter standard for material support under Sections 2339A or 2339B, Plaintiffs' direct liability claims under the Federal ATA should be dismissed.

> **2.** *Plaintiffs have not pled, and cannot plead or prove, that The AP committed an act of international terrorism.*

Plaintiffs' direct liability claims are subject to dismissal for another reason as well:  The Complaint does not plead facts that would establish The AP committed "an act of international terrorism," as Section 2333(a) requires.  Under the statute, a defendant's activities constitute "international terrorism" if they (a) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, 18 U.S.C. § 2331(1)(A), and (b) "appear to be intended" to achieve certain specified terrorist purposes, *i.e.*, "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B).  The language and structure of the statute make clear that it is the defendant's conduct, and not that of the person or entity receiving material support, that must satisfy the definition of international terrorism.

Plaintiffs do not allege that The AP itself committed a terrorist act by publishing the images by the freelance Photographers.  They also do not allege that The AP's actions "appear to be intended" to achieve one of the specified terrorist purposes under Section 2331(1)(B).  The question is whether the factual allegations "would [] lead an objective observer to conclude" that

13

The AP intended such an outcome. *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 694 (7th Cir. 2008) ("[I]t is a matter of external appearance rather than subjective intent."). The notion that The AP intended to achieve one of the specified terrorist purposes is completely implausible. Working with local photographers in the ordinary course of news reporting would not suggest to an objective observer that The AP intended to achieve terrorist goals. *See Boim*, 549 F.3d at 699 (noting that organizations like the Red Cross and Doctors Without Borders may know in advance that the humanitarian aid they provide will benefit terrorists, but an objective observer would not conclude that the aid was *intended* for terrorist purposes).

In *Kaplan*, for example, the court dismissed a direct liability claim against the news organization Al Jazeera for broadcasting "information that may have been helpful to Hezbollah in achieving its organizational goals." 2011 WL 2314783, at *4. The court found that it "strain[ed] credulity" to suggest that "the foreseeable consequence" of Al Jazeera's "broadcast was to enable Hezbollah to aim its rockets more accurately at targets" because, "[u]nlike a financial donation to a terrorist organization, news coverage of the activities of a terrorist organization can serve an entirely different and acceptable purpose, namely, delivering important information to the public." *Id.* at *6. That is certainly true here, as Plaintiffs concede by pleading that The AP's intent was to report the news. Compl. ¶¶ 80, 82, 90; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (plaintiffs failed to plausibly plead intent when there was "an obvious alternative explanation" for defendants' actions); *Stansell*, 2011 WL 1296881, at *9 (no appearance of intent to achieve any of the enumerated terrorist results where plaintiffs alleged that defendants made payments to terrorist group in exchange for agreement to allow defendants to conduct oil exploration activities without being attacked).

Plaintiffs' direct liability claims under the Federal ATA should be dismissed because they have failed to plead that The AP engaged in an act of international terrorism.

3.   *Plaintiffs have not pled, and cannot plead or prove, that The AP proximately caused their alleged injuries.*

Plaintiffs' direct liability claims further fail because the Complaint does not plausibly plead proximate cause, as federal courts have uniformly interpreted § 2333(a) to require. *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 677 (D.C. Cir. 2023); *Fields v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013).  The Supreme Court and the Eleventh Circuit have not defined the precise contours of proximate cause for direct liability claims under the ATA. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223 (11th Cir. 2021) (noting that "federal courts have set out conflicting versions of proximate cause" in this context, without deciding the issue).  Some courts have required "a direct relationship, rather than foreseeability," to establish proximate cause.  *Fields*, 881 F.3d at 748.  Others have held that a plaintiff must show the defendant's "acts were a substantial factor in the sequence of events that led to their injuries," and that (2) their injuries were "reasonably foreseeable or anticipated as a natural consequence" of the defendant's conduct.  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *see also, e.g.*, *In re Chiquita Brands Int'l*, 284 F. Supp. at 1314.  Even under the latter, less demanding formulation, Plaintiffs fail to meet their pleading burden.

In attempting to establish proximate cause, Plaintiffs focus on the supposed propaganda value of the photos to Hamas and the "veneer o[f] respectability" The AP purportedly conferred on the Photographers before and after the October 7 attack.  Compl. ¶¶ 84-94, 114-115.  They do not explain, however, how reporting truthful information about the attack amounts to Hamas propaganda.  There is nothing intrinsically "positive" or "heroic" about portrayal of the attack in

the photos The AP published, notwithstanding the brutal Hamas actions they depict.  *Id.* ¶ 86; *see also id.* Exs. E, F, H, I, J, K, L.  And, regardless of the images' content, there are no factual allegations suggesting that Hamas actually used those particular images to further the October 7 attack in any way.  As Plaintiffs point out, the Hamas militants themselves captured and posted their own recordings to social media, and "[s]everal major media outlets" also "posted real-time photographs of the atrocities being committed."  *Id.* ¶¶ 2-3.  The notion that The AP's ordinary news reporting substantially altered the attack that was already underway to cause foreseeable damage to Plaintiffs is fundamentally implausible, and the factual allegations in the Complaint are far too attenuated and speculative to overcome that implausibility.  *See, e.g.*, *Ofisi*, 77 F.4th at 678-79 (no proximate cause where plaintiffs did "not plausibly allege that *any* money passed from [bank's] financial support of Sudan to al-Qaeda in preparation for the embassy bombings"); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (no proximate cause based on conclusory allegations that the provision of routine banking services to customers affiliated with al-Qaeda caused the September 11, 2001 attacks); *Kaplan*, 2011 WL 2314783, at *4, *7 (no proximate cause where plaintiffs did not allege any facts suggesting that Al Jazeera's "broadcasts were used by Hezbollah to better target their rockets," or "that Hezbollah viewed [Al Jazeera's] broadcasts (rather than another network's broadcasts or no broadcasts at all"); *see also Fields*, 881 F.3d at 759-750 (no proximate cause where plaintiffs had "not pleaded that Twitter's provision of accounts and messaging services to ISIS had any direct relation to the injuries" they suffered).

Accordingly, Plaintiffs' failure to plead proximate cause serves as yet another basis for dismissal of Plaintiffs' direct liability claims under the Federal ATA.

**D.**     **The Complaint fails to state a claim under Florida's ATA (Count VI).**

The Florida ATA, Fla. Stat. § 772.13(1), grants a right to a civil remedy for a person who is injured by a defendant's act of terrorism as defined in Fla. Stat. § 775.30.  That provision defines "terrorism" in a manner nearly identical in relevant part to the Federal ATA, 18 U.S.C. § 2331(1), and Plaintiffs' claim for direct liability under Florida's ATA should be dismissed for similar reasons.  First, the Complaint does not allege that The AP committed an "act of terrorism."  As set forth in Sections I.C.1 and I.C.2 above, Plaintiffs do not allege that The AP committed a violent or dangerous act by publishing accurate photos about a newsworthy event. Nor do they allege that The AP intended any of the terrorist purposes enumerated in the Florida statute, which is essentially the same as its federal counterpart.  Second, like the Federal statute, 18 U.S.C. § 2333(a), the Florida ATA requires a showing of proximate cause between the defendant's actions and the plaintiff's injuries, Fla. Stat. § 772.13(1).  As previously explained, *see* Section I.C.3, the Complaint fails to allege that The AP proximately caused Plaintiffs' emotional distress.  For both of these reasons, the Florida ATA claim should be dismissed.

**II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Count V).**

Like their direct liability claims under the ATA, Plaintiffs' claim for negligent infliction of emotional distress fails because this tort requires a showing of proximate cause.  *Colon*, 14 F.4th at 1223; *id.* at 1224 (explaining that Florida's "substantial factor/reasonable foreseeability standard for proximate cause" is "similar standard" to that adopted by "some federal courts" under ATA).  As demonstrated in Section I.C.3 above, the Complaint fails to plead proximate cause.  The negligent infliction of emotional distress claim should therefore be dismissed.  *See, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 (6th Cir. 2019) (negligent infliction of emotional distress claim properly dismissed along with ATA claims for lack of proximate cause).

III.   **EVEN IF THE COURT WERE TO DISAGREE WITH ALL OF THE FOREGOING, PLAINTIFFS' CLAIMS NEVERTHELESS SHOULD BE DISMISSED BECAUSE THE AP'S JOURNALISM IS FULLY PROTECTED BY THE FIRST AMENDMENT.**

The Complaint should be dismissed for the separate and independent reason that Plaintiffs' claims, even if viable under the Federal ATA and state law, would violate the First Amendment as applied to The AP.

The First Amendment "rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public, that a free press is a condition of a free society." *Associated Press v. United States*, 326 U.S. 1, 20 (1945). Protecting "the publication of truthful information of public concern" is one of "the core purposes of the First Amendment." *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001). Indeed, it is "a bedrock principle underlying the First Amendment" that courts cannot permit punishment for expression because it is deeply offensive or hurtful. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). The AP's publication of indisputably authentic photographs bearing witness to an attack that took the lives of over 1,200 people falls directly "[a]t the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988); *see also Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014) (recognizing First Amendment protection for photojournalism documenting alleged police misconduct).

"To provide 'breathing space' for true speech on matters of public concern," the Supreme Court has imposed a number of limits on liability arising from speech. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 778 (1986) (cleaned up). Among other things, the Court has "often insisted on protecting even some historically unprotected speech through the adoption of a subjective mental-state element," describing this requirement as "an important tool to prevent" self-censorship. *Counterman v. Colorado*, 600 U.S. 66, 73, 75 (2023).

18

For example, the Court has held that the "First Amendment precludes punishment, whether civil or criminal," for advocacy of violence or law violation "unless the speaker's words were intended (not just likely) to produce imminent disorder." *Id.* at 76 (cleaned up); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927, (1982); *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). The Court has also held that false statements about public officials and public figures cannot give rise to liability "without clear and convincing proof" that the speaker "actually had a high degree of awareness of probable falsity," a subjective standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659, 688 (1989) (cleaned up); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). A failure to investigate or reliance on "tainted or troubled sources" is not sufficient to demonstrate such awareness. *Talley v. Time, Inc.*, 923 F.3d 878, 896, 903 (10th Cir. 2019); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

In addition, the Court has held that a news organization cannot be punished for publishing truthful documents relating to a matter of public concern, even if it *knows* the source of the documents obtained them illegally, so long as it did not participate in the illegality. *Bartnicki*, 532 U.S. at 535. Again, this rule is rooted in "our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* at 534 (cleaned up).

The Court has further recognized that "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Buckley v. Valeo*, 424 U.S. 1, 19 (1976). Restricting such expenditures "necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Id.* Accordingly, payments made in furtherance of speech are themselves

protected by the First Amendment.  *Id.* at 39-51 (striking down independent expenditure limitation in campaign finance law on First Amendment grounds); *see also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1255-56 (11th Cir. 2021) (holding that choosing which charities should receive donations is protected speech).

Most relevant to this case, the Court held in *Holder v. Humanitarian Law Project* that the Federal ATA is subject to "rigorous scrutiny" when applied to conduct that "consists of communicating a message."  561 U.S. at 28.  The Court concluded that the statute was constitutionally applied in that case to plaintiffs who wanted to provide training, advice, service, and personnel to terrorist groups.  *Id.* at 33-39.  It emphasized, however, that the Federal ATA places no "restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."  *Id.* at 36.  The Court also made clear that it "in no way" meant to "suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations."  *Id.* at 39; *see also Counterman*, 600 U.S. at 81 (observing that the need for a demanding mental-state requirement is particularly strong when the type of speech at issue is "a hair's-breadth away from political advocacy"); *United States v. Rosen*, 445 F. Supp. 2d 602, 640 (E.D. Va. 2006) (holding, in context of Espionage Act prosecution, that "[p]unishing defendants engaged in public debate for unwittingly harming a legitimate government interest is inconsistent with the Supreme Court's First Amendment jurisprudence").

Thus, even if Plaintiffs could prove their factual allegations, the foregoing cases establish that The AP cannot be held liable simply for publishing accurate photos on a matter of significant public concern, regardless of the photos' source, any potential benefit to Hamas, and any offense that the subject matter may provoke.  The AP also cannot be held liable based on the

fact that it paid the freelance Photographers for the use of the photos they took, at least absent a showing of subjective awareness that the Photographers were affiliates of Hamas and that any payments would benefit Hamas.  Under these principles, The AP's journalism is fully protected by the First Amendment.

Imposing liability on news organizations in such circumstances would chill their speech and deprive the public of essential information about world events and threats to public safety. Indeed, even news reporting that relies on sources with *known* terrorist affiliations – which is not the case here – can play a valuable role in informing the public.  *See, e.g.*, John Miller, *Greetings, America.  My Name Is Osama Bin Laden.  Now That I Have Your Attention . . .* , Esquire (Feb. 1, 1999), https://classic.esquire.com/article/1999/2/1/my-name-is-osama-bin-laden (interviewing Osama bin Laden); Robert J. McCartney, *IRA Admits Placing Bomb Fatal to 11*, The Washington Post (Nov. 9, 1987), https://www.washingtonpost.com/archive/politics/ 1987/11/10/ira-admits-placing-bomb-fatal-to-11/4b49ba2d-9e79-42c2-83f9-821e2823aad6/ (quoting from Provisional Irish Republican Army statement after terrorist attack); Jacques Leslie, *In Viet Cong Country, Villagers Are the Key*, Los Angeles Times (Feb. 4, 1973), https://www.newspapers.com/newspage/386223908/ (reporting on visit to Viet Cong-controlled territory during Vietnam War).

There is no way to reconcile Plaintiffs' claims with the First Amendment, and each of them should be dismissed on that basis.  Ultimately, however, this Court need not reach the constitutional question because, as set forth above, the Complaint also fails to state a claim on statutory and common law grounds.  *See NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1209 n.4 (11th Cir. 2022) ("federal courts should generally avoid reaching constitutional questions if there are other grounds upon which a case can be decided" (cleaned up)).

**CONCLUSION**

For the foregoing reasons, The AP respectfully requests that the Complaint be dismissed for failure to state a claim with prejudice.[4]

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), The AP requests that the Court set a hearing on this motion.  A hearing would permit the parties to address the complexities of Plaintiffs' claims under the Federal and State Anti-Terrorism Acts as well as the significant First Amendment interests at stake in this case.  The AP estimates that the time required for argument would be one hour.

 Date: April 22, 2024                                      Respectfully submitted,

                                                           BALLARD SPAHR LLP

                                                           By:    /s/ Charles D. Tobin
                                                                Charles D. Tobin (Fla. Bar No. 816345)
                                                                1909 K Street, NW, 12th Floor
                                                                Washington, DC 20006
                                                                Telephone: (202) 661-2200
                                                                Fax: (202) 661-2299
                                                                tobinc@ballardspahr.com

                                                                R. Stephen Stigall (*pro hac vice*)
                                                                Elizabeth Seidlin-Bernstein (*pro hac vice*)
                                                                1735 Market Street, 51st Floor
                                                                Philadelphia, PA 19103
                                                                Telephone: (215) 665-8500
                                                                Fax: (215) 864-8999
                                                                stigalls@ballardspahr.com
                                                                seidline@ballardspahr.com

                                                                *Attorneys for Defendant The Associated Press*

---

[4] The AP's Consent Motion to Exceed Page Limit for Its Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 28) is pending.  Should the Court deny that Motion, The AP will file a version of this brief that conforms to the 20-page limit of Local Rule 7.1(c)(2).