UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:24-cv-20684-KMM

NOACH NEWMAN, ADIN GESS,
MAYA PARIZER, NATALIE SANANDAJI
and YONI DILLER,

    Plaintiffs,

v.

THE ASSOCIATED PRESS,

    Defendant.

_____/

**DEFENDANT'S REPLY IN FURTHER SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendant The Associated Press ("The AP") respectfully submits this Reply in further support of its Motion to Dismiss the Amended Complaint under Rule 12(b)(6) ("Mot.," ECF No. 48). Throughout their Opposition ("Opp.," ECF No. 51), Plaintiffs fall back on the Amended Complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" to plausibly state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They also distort the applicable law and attempt to minimize the unprecedented nature of their claims against a news organization for its reporting on a matter of public concern. The Court should dismiss the Amended Complaint with prejudice.

**I.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL OR STATE ANTI-TERRORISM ACTS.**

"Terrorism is an emotionally and politically charged issue, but the ATA ultimately is a tort statute," *Kemper v. Deutsche Bank*, 911 F.3d 383, 390 (7th Cir. 2018), for which Plaintiffs must plausibly plead each and every element. As The AP established in its Motion, Mot. at 7-21,

Plaintiffs have not met that burden. Without rehashing the same arguments here, The AP here responds to Plaintiffs' main contentions in opposition.

### A. Aiding and Abetting

*General awareness.* Plaintiffs assert in passing that The AP "does not dispute" that they "properly pled" that The AP "was generally aware of its role in the illegal activity at the time it provided assistance." Opp. at 4, 10. Not so. In its Motion, The AP argued that the factual allegations in the Amended Complaint fail to establish that it was actually aware of the Freelance Photographers' supposed ties to Hamas or that those ties were so close that The AP had to be aware it was assuming a role in Hamas' terrorist activities. *See* Mot. at 9 & n.4; *see also Zobay v. MTN Grp.*, 2023 WL 6304961, at *21 (E.D.N.Y. Sept. 28, 2023) ("general awareness" element is met only if "(1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is 'so closely intertwined' with the terrorist organization's illegal activities that one can reasonably infer the defendant was generally aware of its role in terrorist activities").

*Knowing and substantial assistance.* Plaintiffs seek to evade the "strong showing of assistance and scienter" required by the Supreme Court in *Twitter v. Taamneh*, 598 U.S. 471, 500 (2023), by arguing that, unlike the allegations of "passive nonfeasance" against the social media platforms in that case, the allegations against The AP are of "affirmative misfeasance." Opp. at 4-5. While the facts of this case are not identical to *Taamneh*, they are much closer than Plaintiffs acknowledge.

Plaintiffs repeatedly assert that The AP gave "direct funding" to Hamas, Opp. at 1, 6, 9, but the facts pleaded in the Amended Complaint do not support that inference. Even assuming

2

the Freelance Photographers were "affiliates" of Hamas,[1] however Plaintiffs define that term, The AP's purchase of photographs is fundamentally different from a direct donation to Hamas. It is more akin to purchasing groceries from a shopkeeper who allegedly sympathizes with Hamas – an arms-length transaction that does not directly benefit Hamas and does not "permit a reasonable inference" that the purchaser "recognized the money it transferred" to the shopkeeper when making a purchase would go to Hamas. *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 871 (D.C. Cir. 2022), *cert. denied sub nom. Bernhardt v. HSBC Holdings*, 144 S. Ct. 280 (2023); *cf. Taamneh*, 598 U.S. at 489 ("if aiding-and-abetting liability were taken too far, then ordinary merchants could become liable for any misuse of their goods and services, no matter how attenuated their relationship with the wrongdoer"). Plaintiffs have not cited any case in which ATA liability was imposed for the defendant's mere purchase of goods or services from a vendor alleged to be connected to a terrorist organization. In fact, the alleged relationship between The AP and Hamas is even more attenuated than the relationship between the social media platforms and ISIS in *Taamneh*, where the plaintiffs accused the platforms of hosting and recommending videos uploaded by ISIS and sharing advertising revenues directly with ISIS. *See Taamneh*, 598 U.S. at 481-82.

Nor have Plaintiffs plausibly pleaded that The AP's purchase of photos resulted in a "significant" amount of money – or, for that matter, *any* money – "indirectly flow[ing]" to

---

[1] While the Opposition refers to the Freelance Photographers as "members" of Hamas who are themselves "terrorists," Opp. at 1, 13-15, nothing in the Amended Complaint supports that characterization. *See* Am. Compl. ¶ 31 (describing Freelance Photographers as "embedded with or affiliated with Hamas"). In the same vein, Plaintiffs assert in the Opposition that the Freelance Photographers took the photos purchased by The AP "while engaged in an act of international terrorism," Opp. at 3, although the Amended Complaint does not include even a conclusory allegation that the Freelance Photographers took part in the violence and kidnapping that Hamas perpetrated.

Hamas. *Bernhardt*, 47 F.4th at 871; *see also Siegel v. HSBC N. Am. Holdings*, 933 F.3d 217, 225 (2d Cir. 2019) (plaintiffs failed to plead substantial assistance despite allegation that bank "provided hundreds of millions of dollars" to intermediary, because "they did not advance any non-conclusory allegation" that al-Qaeda "received any of those funds"); *Zobay*, 2023 WL 6304961, at *34 (dismissing aiding and abetting claim against certain defendant telecommunications companies because factual allegations in complaint did not make "apparent how much assistance" they provided). Plaintiffs' conclusory allegations to the effect that The AP's payments to the Freelance Photographers "substantially assisted Hamas," Am. Comp. ¶ 113, are wholly inadequate to establish that any money went to Hamas or that the amount was significant. By contrast, in the cases Plaintiffs cite, Opp. at 4, 7-10, the complaints included specific allegations about the amount of money and other assistance that went to terrorist groups. *See Bonacasa v. Standard Chartered*, 2023 WL 7110774, at *5 (S.D.N.Y. Oct. 27, 2023) (alleging defendant bank provided fertilizer manufacturer "with at least twenty-five million dollars in loans," that al-Qaeda "sourced 'tens of thousands of tons'" of explosive ingredient from manufacturer's fertilizer plants, and that "90% of IED casualties in Afghanistan came from" devices using that ingredient); *Zobay*, 2023 WL 6304961, at *30 (detailing how defendant telecommunications company provided "millions of dollars in funding, embargoed dual-use technologies, and operational or technical support" to Islamic Revolutionary Guard Corps). There is nothing like that in the Amended Complaint here.

 **B. Conspiracy**

With respect to their conspiracy claim, Plaintiffs incorrectly argue – without citing any authority – that they do not have to plead that The AP's goal in purchasing the photographs was "to commit terrorism." Opp. at 12. To the contrary, the shared objective in a conspiracy under the ATA must be to commit an act of international terrorism. *See Taamneh*, 598 U.S. at 495

4

("The ATA opens the courthouse doors only if the plaintiff is 'injured . . . by reason of an act of international terrorism," thus "an act of international terrorism" is "the actionable wrong"); *Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *7 (D.D.C. Nov. 16, 2020) ("to be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism"), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022); *Zobay*, 2023 WL 6304961, at *35 (defendants must have agreed to "carry out a common scheme to commit an act of international terrorism"). Thus, even if Plaintiffs had adequately alleged that The AP and the Freelance Photographers agreed "to work together to publicize Hamas' terrorist activities and propaganda," Opp. at 12 (citing Am. Compl. ¶¶ 119-120), that would not meet the legal standard because spreading propaganda by itself is not equivalent to committing an act of international terrorism.

In any event, Plaintiffs' conclusory allegation of "an agreement to publicize Hamas's terrorist activities and further Hamas's propaganda designed to win support for their ongoing murderous cause," Am. Compl. ¶ 119, is not backed by any factual allegations. *See Gonzalez v. Google*, 2 F.4th 871, 907 n.19 (9th Cir. 2021) (disregarding "conclusory allegation" that "Google conspired with ISIS, its members, and affiliates to promote, plan, and carry out the acts of international terrorism that injured the plaintiffs" (cleaned up)), *rev'd on other grounds by Taamneh*, 598 U.S. 471; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94 (11th Cir. 2010) (holding that "formulaic recitations" of agreement "were insufficient" to plead conspiracy); *Zobay*, 2023 WL 6304961, at *35 ("Plaintiffs allege as a common objective 'expelling the United States from the Middle East' through the commission of terrorist acts, but the allegations do not plausibly support that Defendants shared in that goal." (cleaned up)). Plaintiffs' allegation is particularly implausible because it stands to reason that *Hamas would pay*

5

*The AP* to disseminate its propaganda, and not the other way around. Indeed, elsewhere in the Amended Complaint and their Opposition, Plaintiffs make the much more plausible allegation that The AP's goal was news reporting. *See* Am. Compl. ¶¶ 92, 100; Opp. at 15 (stating that The AP purchased the photographs "for content and profit"); *see also Iqbal*, 556 U.S. at 663-64 (court can "draw on its experience and common sense" in determining whether complaint "states a plausible claim").

      C.      **Direct Liability**

*Scienter.* Plaintiffs' argument that they have adequately pleaded scienter for their material support claims also rests on conclusory allegations and misleading descriptions of the pleaded facts. Opp. at 14-16. Stripping away all of the Amended Complaint's legal conclusions, Plaintiffs are left with factual allegations that at best would show, if proved to be true, that (1) The AP was on notice in advance of October 7 that one of the four Freelance Photographers may have expressed support for "Hamas' political platform," Am. Compl. Ex. B at 1, and was on "friendly terms" with members of Hamas, *id.* ¶¶ 33-35, 63; and (2) on October 7, the Freelance Photographers took photographs in the vicinity of Hamas militants during the attack without wearing press credentials, id. ¶¶ 57, 62, 71-77. Those allegations in no way establish that by paying the Freelance Photographers for news photographs, The AP "knowingly gave money to Hamas." Opp. at 15; *see Iqbal*, 556 U.S. at 679 (complaint should be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'").

*Act of international terrorism.* Plaintiffs mistakenly contend that they do not need to plead separately that The AP committed an act of "international terrorism" as defined by Section 2331(1) because their allegations that The AP violated the material support statutes are sufficient. Opp. at 16. The one case they cite for that proposition, *Goldberg v. UBS*, 690 F. Supp. 2d 92, 113 (E.D.N.Y. 2010), was decided before the Second Circuit clarified that "the

6

provision of material support to a terrorist organization does not invariably equate to an act of international terrorism." *Linde v. Arab Bank*, 882 F.3d 314, 326 (2d Cir. 2018) (explaining that a defendant's act must also meet the definition of Section 2331(1), including the requirements that the act "involve violence or endanger human life" and "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government"); *see also Gonzalez*, 2 F.4th at 899-900 ("Nothing in the statutory scheme suggests that material support always qualifies as international terrorism because such conduct may or may not objectively appear to be intended to intimidate or coerce."); *Kemper*, 911 F.3d at 390 (holding that bank's transactions with Iranian institutions, allegedly in violation of material support statutes, did not meet statutory definition of "international terrorism" because "doing business with companies and countries that have significant legitimate operations is not necessarily" dangerous to human life, and "[t]o the objective observer, its interactions with Iranian entities were motivated by economics, not by a desire to intimidate or coerce").

*Proximate cause.* As for the proximate cause requirement for direct liability under the ATA, Plaintiffs again cite to the Amended Complaint's conclusory allegations and argue that the issue is one for the jury. Opp. at 17-18. But courts routinely dismiss ATA claims at the pleading stage when plaintiffs fail to plead sufficient facts to show proximate cause. *See* Mot. at 19-20 (collecting cases). The Court should do the same here.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

*Proximate cause.* Plaintiffs argue that The AP "conveniently both ignores and denies paragraph 145 of the Amended Complaint," Opp. at 19, which states that The AP's payments to the Freelance Photographers "proximately and substantially caused Plaintiffs' injuries," Am. Compl. ¶ 145. But that conclusory allegation of proximate cause is not entitled to an assumption

7

of truth and is properly disregarded. *See Iqbal*, 556 U.S. at 678 (court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Simpson v. Sanderson Farms*, 744 F.3d 702, 713 (11th Cir. 2014) ("conclusory allegation" was not sufficient to "plausibly establish proximate cause").

***Physical impact or physical injury resulting from emotional distress.*** Plaintiffs seem to misunderstand The AP's argument, which is that they "fail to allege that they experienced *either* a physical impact during the October 7 attack *or* a physical injury resulting from their emotional distress." Mot. at 21 (emphasis added). Though the Amended Complaint contains a vague allegation that Plaintiffs Newman, Diller, Sanandaji, and Parizer "suffered physical injuries" while escaping from the attack at the Nova Festival, Am. Compl. ¶ 142, it does not plead facts that would demonstrate they experienced "touching" by an "outside force or substance" that rises "to the level of impact." *Zell v. Meek*, 665 So. 2d 1048, 1050 n.1 (Fla. 1995). Plaintiffs must plead at least some sort of physical impact. *Id.* Furthermore, Plaintiffs apparently do not dispute that they have failed to allege physical injuries *resulting* from their emotional distress, as Florida law requires – it is not enough to plead the reverse, *i.e.*, that the emotional distress resulted from the physical injuries, as Plaintiffs do. Am. Compl. ¶ 143; Opp. at 19; *see also Zell*, 665 So. 2d at 1052, 1054 ("plaintiff's physical injury must be caused by the psychological trauma" to avoid "purely subjective and speculative damages for psychic trauma alone").

### III.  THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS.

Plaintiffs' response to The AP's First Amendment argument is fundamentally contradictory: They insist this "case is not about journalism or the First Amendment" and concede that The AP "has every right to publish whatever materials it wants, including pictures such as those referenced in the Amended Complaint." Opp. at 1. At the same time, they base their claims not only on The AP's alleged payments to the Freelance Photographers, but also on

the notion that The AP helped Hamas by publishing "terrorist propaganda." *Id.* A complaint about the publication of terrorist propaganda is necessarily a complaint about the content of the speech. If The AP had paid the same Freelance Photographers for images that were entirely unrelated to Hamas – say, scenes from a busy marketplace – surely Plaintiffs would not argue that The AP provided a "propaganda platform" for Hamas. Opp. at 20. The content of the photographs is thus central to Plaintiffs' claims, and that content is protected by the First Amendment.

Plaintiffs' assertion that "the First Amendment is not a defense to ATA claims," Opp. at 22, plainly is incorrect. In its only decision addressing the First Amendment implications of the ATA, *Holder v. Humanitarian Law Project*,[2] the Supreme Court strongly suggested that "independent speech" – even speech that "benefits foreign terrorist organizations" – would be constitutionally protected. 561 U.S. 1, 39 (2010). Because this case involves The AP's independent speech, *i.e.*, its editorial decision to purchase and publish photographs, there is no avoiding a First Amendment inquiry now, at the pleading phase, or if the Court denies this motion and the case proceeds. The Supreme Court's extensive First Amendment jurisprudence protecting speech on matters of public concern and the expenditure of money to communicate ideas – even though they are not ATA cases – will always provide the guardrails for imposing liability on news organizations for their reporting. Opp. at 22, 24-26.

Plaintiffs argue in the alternative that The AP's publication of photographs falls into the recognized First Amendment exception for incitement, Opp. at 23, but this theory also misses the mark. As the Supreme Court reiterated just last year, "the First Amendment precludes

---

[2] Contrary to Plaintiffs' suggestion, Opp. at 11 n.1, the Supreme Court's most recent ATA decision, *Taamneh*, did not address any constitutional arguments. *See generally* 598 U.S. 471.

punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman v. Colorado*, 600 U.S. 66, 76 (2023).  None of the factual allegations in the Amended Complaint suggest that The AP *intended* to produce imminent disorder by publishing photographs of the October 7 attack.

Finally, Plaintiffs erroneously argue that *Bartnicki v. Vopper*, 532 U.S. 514 (2001), actually supports their position because it permits punishment of journalists who participate in their sources' illegal conduct, and "Plaintiffs pled that AP participated in the illegality by providing material support to an FTO and to terrorists."  Opp. at 24.  *Bartnicki* involved wiretap laws that prohibited the publication of surreptitiously recorded communications.  532 U.S. at 519-24.  The Court held that those laws, despite their facial applicability to the media defendants' conduct, could not constitutionally be applied because the defendants had not taken part in the underlying crime of surreptitious recording.  *Id.* at 527-35.  Similarly, in this case Plaintiffs seek to hold The AP liable based on its alleged violation of the material support statutes, but there is no allegation that The AP itself engaged in the underlying crime of terrorism.  Under these circumstances, even if The AP technically violated the material support statutes, imposing liability on The AP would be unconstitutional.

## CONCLUSION

For the foregoing reasons, and those set forth in its opening Motion, The AP respectfully requests that the Amended Complaint be dismissed with prejudice for failure to state a claim.

Date: June 18, 2024

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Charles D. Tobin*
    Charles D. Tobin (Fla. Bar No. 816345)
    1909 K Street, NW, 12th Floor
    Washington, DC 20006
    Telephone: (202) 661-2200
    Fax: (202) 661-2299
    tobinc@ballardspahr.com

    R. Stephen Stigall (*pro hac vice*)
    Elizabeth Seidlin-Bernstein (*pro hac vice*)
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    Telephone: (215) 665-8500
    Fax: (215) 864-8999
    stigalls@ballardspahr.com
    seidline@ballardspahr.com

*Attorneys for Defendant The Associated Press*