**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-20684-MOORE/Elfenbein

**NOACH NEWMAN**, *et al.*,

      Plaintiffs,

v.

**THE ASSOCIATED PRESS**,

      Defendant.

_____/

## ORDER ON PLAINTIFFS' SECOND ORAL MOTION TO COMPEL

**THIS CAUSE** is before the Court on Plaintiffs Noach Newman, Adin Gess, Maya Parizer, Natalie Sanandaji, and Yoni Diller's ("Plaintiffs") Second Oral Motion to Compel, ECF No. [82], and Defendant the Associated Press's *ore tenus* Motion to Seal, ECF No. [83].   In their Notice of Hearing, ECF No. [68], Plaintiffs alerted the Court to the following dispute that was discussed at the Discovery Hearing held on September 6, 2024 (the "Hearing"): "Whether to include the custodian of Defendant The Associated Press' ("AP") President and Chief Executive Officer Daisy Veerasingham in the custodians to be searched by AP."  ECF No. [68] at 1. The Honorable K. Michael Moore has referred this case to me "to take all necessary and proper action as required by law with respect to any and all pretrial discovery matters."  ECF No. [26].  Having considered the Parties' respective filings, the record, and the relevant law, Plaintiffs' Second Oral Motion to Compel is **DENIED** and Defendant's *ore tenus* Motion to Seal is **GRANTED**.

## I.       BACKGROUND

In the Order on Plaintiff's first Oral Motion to Compel (the "Order"), the Court ordered Defendant to "provide Plaintiffs with a list of custodians which it searched in pursuit of the discovery materials sought by Plaintiffs." ECF No. [59] at 5.   If Plaintiffs identified other individuals that should be designated as custodians, the Order provided the Parties with a procedure to address that issue.  *See id.*

On August 1, 2024, Defendant complied with the Order and sent Plaintiffs a letter with a list of 20 custodians it would search for responsive documents.  *See* ECF No. [68-3] at 2.  Plaintiffs responded, on August 22, 2024, seeking an explanation as to why (1) Daisy Veerasingham ("Ms. Veerasingham") — the President and Chief Executive Officer of the Associated Press, (2) Jessica Bruce — Senior Vice President, Human Resources and Corporate Communications at the Associated Press, and (3) Clare Solly — the Executive Assistant to Daisy Veerasingham were not included on the list of custodians provided by Defendant on August 1, 2024.  *See id.* at 2, 5.

The Parties met and conferred, and, during that conferral, Defendant agreed to add Jessica Bruce as a custodian but declined to include Ms. Veerasingham and Clare Solly as custodians.  *See id.* at 5.   Defendant explained to Plaintiff, in an email dated August 28, 2024, that "Ms. Veerasingham had no direct involvement in any of the issues relevant to this case, and there is no relevant information to be gleaned from her documents beyond what is already available from the existing custodians."  *Id.*  Defendant continued stating that "[t]o require [it] to search the CEO's materials where Plaintiffs have not demonstrated that she would have relevant information is overly burdensome and not proportional to the needs of Plaintiffs in the case."  *Id.*  Unable to resolve this discovery issue, Plaintiffs contacted the Court to set this matter for hearing.

At the Hearing, Plaintiffs argued that Ms. Veerasingham had responsive documents and, therefore, Defendant should search her as a custodian.  To substantiate this claim, Plaintiffs point out that (1) Ms. Veerasingham appears 21 times in Defendant's privilege log and (2) Defendant produced documents showing that Ms. Veerasingham was involved in issues relevant to the instant case.  *See* ECF No. [68-2] at 33-42; ECF No. [68-3] at 7-10; *see generally* ECF No. [77].   Five of the eight documents Plaintiffs relied on in support of the Second Oral Motion to Compel were designated "Confidential" (the "Confidential Documents") pursuant to the Court's Protective Order, ECF No. [66], which prevented Plaintiffs from making them available to the Court before the hearing as they could not file them publicly.  In light of that limitation, the Court announced that it would take this discovery issue under advisement and issue a ruling after reviewing the Confidential Documents.  To that end, the Court ordered Plaintiffs to file the Confidential Documents under seal following the Hearing's conclusion.

Despite not having the documents available for review, the Court allowed the Parties to proceed with the Hearing and to present their respective arguments.  Given that the Parties would need to reference and describe the Confidential Documents in open court, Defendant moved *ore tenus* to seal the portions of the Hearing transcript that reference or describe the Confidential Documents.  The Court found good cause for the *ore tenus* Motion to Seal and granted it; the Court memorializes that ruling in this Order.

To support their position as the moving party, Plaintiffs relied on four documents. First, Plaintiffs referenced an email sent on November 9, 2023 — on which Ms. Veerasingham was *not* copied — that discussed Ms. Veerasingham's son doing work to vet Hassan Esliah (a freelance photographer and alleged Hamas operative/sympathizer) from whom Defendant had purchased photographs in the aftermath of Hamas's October 7, 2023 attack on Israel (the "October 7 Attack").

3

*See* ECF No. [77-2] at 1.  Second, Plaintiffs referenced an update Ms. Veerasingham provided to Defendant's board of directors on November 16, 2023, in which she informed the board that she responded to a letter from United States Senator Tom Cotton inquiring into allegations that freelance photographers who contributed to Defendant's coverage of the October 7 Attack were colluding with Hamas.  *See* ECF No. [77-5] at 5.  Plaintiffs argue that Ms. Veerasingham's involvement in responding to Senator Collins concerning the October 7 Attack indicates that she has documents relevant to this case.  *See* ECF No. [68-3] at 7-10.  Third, Plaintiffs referenced an email chain created on November 12, 2023 on which Ms. Veerasingham discussed the statement Defendant would use in response to inquiries concerning Defendant's association with Hassan Esliah and other freelance photographers in Gaza.  *See* ECF No. [77-1] at 1-2.  Finally, Plaintiffs referenced an email chain created on November 9, 2023 on which an employee of Defendant reported to Ms. Veerasingham about the reputational risk Defendant carried due to its association with Hassan Esliah and the other freelance photographers.  *See* ECF No. [77-3] at 1-2.

Defendant, for its part, argued that Plaintiffs failed to establish that Ms. Veerasingham possesses relevant discovery material and, therefore, the Court should not compel Defendant to designate Ms. Veerasingham as a custodian.  At the Hearing, Defendant framed Plaintiff's Amended Complaint as alleging that Defendant acquired photographs of the October 7 Attack from freelance photographers associated with Hamas.  Defendant claims that Ms. Veerasingham, as the President and CEO of an organization as large as Defendant's, would not have been involved in either the sourcing or the decision to purchase the photographs taken by the freelance photographers named in the Amended Complaint.  Rather, Defendant's employees operating in Gaza and southern Israel made the decision to acquire the photographs at issue in the Amended Complaint.  Furthermore, Defendant claimed at the Hearing that the communications Plaintiffs

relied upon to support their argument were created following a report by HonestReporting — an Israeli media advocacy group — that accused Defendant and other news agencies of using freelance photographers embedded with Hamas. HonestReporting's accusation spurred several congressional inquiries concerning Defendant's association with Hassan Esliah and the other freelance photographers named in the Complaint.  Defendant claims that Ms. Veerasingham, as Defendant's CEO and President, needed to become aware of the current state of Defendant's relationship with the freelance photographers named in the Amended Complaint to respond to those inquiries and protect Defendant's reputation.  Finally, Defendant argued that compelling Defendant to designate Ms. Veerasingham as a custodian would not be proportional to the needs of the case because the costs associated with searching Ms. Veerasingham as a custodian would be substantial but would yield no benefit to Plaintiffs' case.

Plaintiffs closed out oral arguments on this issue in rebuttal, asserting that the search of Ms. Veerasingham would not be as burdensome as Defendant claims and reasserting its belief that Ms. Veerasingham has discovery materials relevant to the issues in this case.

## II.    LEGAL STANDARDS

A party may file a motion to compel discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.  Rulings on motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) ("Case law states that a motion to compel discovery is committed to the discretion of the trial court, and the function of this court is to determine whether the trial court abused its discretion in entering the challenged order." (citations omitted)).

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citation omitted).

Rule 26(b) explicitly permits a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party."  Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 451 (1978) (footnote call number and citation omitted).

Although relevance under Rule 26(b)(1) is construed broadly, it is not without limits. Discovery must not only be relevant to the claims and defenses in the case, but it must also be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The parties' claims and defenses determine the scope of permissible, relevant discovery.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997).

The party resisting discovery bears the burden of demonstrating specifically how the request is unreasonable or not relevant.  *See, e.g., Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 697 (S.D. Fla. 2011) (noting that the court could grant the motion to compel "solely based on [discovery respondent's] procedurally inadequate objections").  After a properly stated objection is presented, the proponent of a motion to compel seeking to overrule the objection must prove the relevance of the requested discovery.  *See, e.g., Diamond State Ins. Co. v. His House, Inc.*, No. 10-CV-20029, 2011 WL 146837 (S.D. Fla. Jan. 18, 2011) (finding that the requesting party had not shown the relevance of requested deposition).

## III.    DISCUSSION

As the party moving to compel, Plaintiffs bear the burden of showing that Ms. Veerasingham is in possession of relevant discovery documents and, therefore, should be designated a custodian. *See e-Ventures Worldwide, LLC v. Toll Bros.*, No. 22-CV-552, 2023 WL 4419736, at *1 (M.D. Fla. July 10, 2023) ("The party moving to compel discovery bears the initial

burden of proving it is relevant."). In deciding whether Plaintiffs have carried the burden of proving relevance, the Court will consider three factors:

First, the Court will consider whether Plaintiffs have established that the list of custodians Defendant provided is inadequate. *See Enslin v. Coca-Cola Co.*, No. 14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (finding that for "a court to compel a party to search the ESI of additional custodians" "the requesting party [must] show that the responding party's search was inadequate." (footnote call number and citations omitted)); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.,* No. 17-MD-2785, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) ("[A]bsent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems most likely to possess responsive information and to search the files of those individuals." (footnote call number and quotation omitted)).

Plaintiffs have not established that Defendant's search methods or the procedure by which Defendant identified the custodians are inadequate. Defendant initially designated 20 custodians it believed to have documents responsive to Plaintiffs' discovery requests. *See* ECF No. [68-3] at 2. After reviewing Defendant's privilege log, Plaintiffs identified three additional individuals, including Ms. Veerasingham, who they wanted Defendant to designate as custodians. *See id.* Aside from this perceived oversight, Plaintiffs offer no evidence to suggest that the method Defendant used to designate custodians is inadequate in any way. *See id.* And to the extent that imperfections existed in its method, Defendant was receptive to Plaintiffs' concerns and addressed them in part by updating the list to include a custodian it agreed would likely possess responsive documents. *See id.* at 4-5. In light of the foregoing, Plaintiffs fail to show the inadequacy of Defendant's designation process. *See* The Sedona Conference, *The Sedona Principles, Third*

*Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Produ*, 19 Sedona Conf. J. 1, 17 (2018) ("The requesting party has the burden on a motion to compel to show that the responding party's steps to . . . produce relevant electronically stored information were inadequate.");[1] *see also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations. Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy.").

Second, the Court will consider whether Plaintiffs have established that a search of Ms. Veerasingham "would provide *unique* relevant information not already obtained." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (emphasis in original); *see also In re EpiPen*, 2018 WL 1440923, at *2 ("[T]he party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case." (footnote call number omitted)).

Plaintiffs argue that the Confidential Documents and Ms. Veerasingham's communications with Senator Collins establish that Ms. Veerasingham possesses unique, responsive documents that are relevant to its claims. Having reviewed the documents filed under seal, the Court disagrees. Taking first the emails to which Ms. Veerasingham replied or was copied, none of those communications demonstrate or suggest that she possesses responsive documents that would not

---

[1] "To resolve disputes regarding the production of metadata, many courts have turned to the Sedona Principles and Sedona Commentaries thereto, which are the leading authorities on electronic document retrieval and production." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D. Pa. 2010) (citing *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008); other citations omitted)

be otherwise produced during Defendant's search of the 21 designated custodians.  *See generally* ECF No. [77-1]; ECF No. ECF No. [77-2]; ECF No. [77-3].  Rather, the emails in question show subordinate employees updating Ms. Veerasingham on Defendant's current relationship with freelance photographers operating in Gaza with possible ties to Hamas so that she could effectively assist Defendant in navigating a reputational crisis.  *See generally id.*  And while the Court agrees that Ms. Veerasingham appears to approve a subordinate's decision to cut ties with certain freelance photographers in the email chain created on November 12, 2023, Ms. Veerasingham was not involved in the micro-level decision-making that concluded in that result.  Instead, Ms. Veerasingham was deferring to the judgment of a subordinate with knowledge of the relevant facts and details necessary to make that decision.[2]  *See* ECF No. [77-1] at 1-2.

These email communications — at least in part — provided Ms. Veerasingham with the information necessary to update Defendant's board of Directors and to respond to inquiries from congressmen.  *See* ECF No. [68-3] at 7-10; ECF No. [77-5] at 5.  However, neither that update nor those communications suggest that Ms. Veerasingham possesses *unique* discovery documents, but rather they show Ms. Veerasingham flatly denying allegations that Defendant had advanced knowledge of the October 7 Attack and statements that Defendant had no knowledge of the freelance photographer's connection to Hamas prior to purchasing photographs from them. *See id.*

Plaintiffs, thus, fail to establish that Ms. Veerasingham has unique discovery material, a finding which weighs heavily against designating her as a custodian.  *See In re EpiPen*, 2018 WL 1440923, at *4 (denying request to designate an individual as a custodian because said individual possessed "very limited" "relevant information" and any relevant documents in the individual's

---

[2] Plaintiffs also reference an email that implies Ms. Veerasingham's son is involved in vetting the freelance photographers with possible connections to Hamas.  *See* ECF No. [77-2] at 1.  However, it is unclear how this communication suggests that Ms. Veerasingham possesses unique discovery material, as her son, like other employees of Defendant, would be operating independently of her.

"possession or control [could have] likely be[en] obtained from already designated custodians");
*see also Enslin*, 2016 WL 7042206, at *3 ("[The plaintiff's] speculation that [the d]efendants'
search failed to uncover that information is insufficient to show that they improperly excluded her
as a custodian.").

Finally, the Court considers whether compelling Defendant to designate Ms. Veerasingham
as a custodian would be proportional to the needs of the case. *See Enslin*, 2016 WL 7042206, at
*15 ("The Federal Rules . . . do not require [a responding party] to embark on an unrestricted
search through the ESI of every senior executive employee in the hopes we may find additional
potentially relevant material, especially where, as here, it has almost certainly already been
gathered, processed and reviewed." (citation omitted)).

Without a finding that Ms. Veerasingham is in possession of unique discovery documents,
a search of her documents will not be proportional to the needs of the case. As it noted at the
Hearing, Defendant is a non-profit organization with over one thousand employees and a global
footprint. Ms. Veerasingham, as Defendant's chief executive, comes to possess countless
documents concerning Defendant's global operations unrelated to the instant action. To compel
Defendant to designate Ms. Veerasingham as a custodian would force Defendant to search through
the countless documents in her possession. Imposing that cost on Defendant could be just if Ms.
Veerasingham were in possession of unique discovery documents, but the Court has determined
that she does not. Thus, compelling Defendant to search Ms. Veerasingham as a custodian is not
proportional to the needs of the case and would ultimately be of no benefit to Plaintiffs. *See
Devries v. Morgan Stanley & Co. LLC*, No. 12-CV-81223, 2015 WL 1623928, at *2 (S.D. Fla.
Apr. 7, 2015) (denying the plaintiffs' request for "additional [electronically stored information]
from custodians" because the plaintiffs' request was "unduly burdensome, overbroad, and overly

vague" and because the defendants' burden in searching for additional electronically stored information "far outweigh[ed] the benefits").

In sum, Plaintiffs' request to compel Defendant to designate Ms. Veerasingham is denied because (1) Plaintiffs have not demonstrated that the procedure by which Defendant identified the 21 custodians was inadequate, (2) Plaintiffs failed to establish the Ms. Veerasingham is likely in possession of unique discovery documents, and (3) searching Ms. Veerasingham would add little to no benefit to Plaintiffs' cases and, thus, a search of her records would not be proportional to the needs of the case.[3]

## IV.    CONCLUSION

Accordingly, it hereby **ORDERED and ADJUDGED** as follows:

1.    Plaintiffs Noach Newman, Adin Gess, Maya Parizer, Natalie Sanandaji, and Yoni Diller's Second Oral Motion to Compel, **ECF No. [82]**, is **DENIED**.

2.    Defendant the Associated Press's *ore tenus* Motion to Seal, **ECF No. [83]**, is **GRANTED**.  The Clerk of Court is **DIRECTED** to seal the Digital Audio Recording of the September 6, 2024 Hearing from 00:08:10 to 00:13:20.

---

[3] Before it concludes its discussion of this issue, the Court must explain why it did not rely on *Cemex Construction Materials Florida, LLC v. Armstrong World Industries, Inc.*, No. 16-CV-186, 2018 WL 11455634 (M.D. Fla. May 16, 2018) — the only case Plaintiffs cite to support their position — in reaching its conclusion.  *See* ECF No. [68-4] at 2.  First, *Cemex* is factually distinguishable from the instant case. There, the defendant sought to compel the plaintiff to designate its in-house counsel as a custodian; here, Plaintiffs are seeking to designate Defendant's chief executive and president as a custodian.  Second — and more importantly, the plaintiff in *Cemex* demonstrated to the court that the defendant's in-house counsel possessed unique discovery documents.  *See Cemex*, 2018 WL 11455634, at *2 ("The undersigned finds that it is probable that [] records [belonging to the plaintiff's in-house counsel] contain responsive documents. Notably, [a deponent] testified at his deposition that he consulted with [plainitff's in-house counsel] in 2014 regarding the alleged bootlegging scheme.").  As already discussed in the body of this Order, Plaintiffs here failed to show that Ms. Veerasingham is in possession of unique discovery documents — a finding that weighed heavily against granting the Second Motion to Compel.

CASE NO. 24-CV-20684-MOORE/Elfenbein

**DONE and ORDERED** in Chambers in Miami, Florida on October 3, 2024.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

12