**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:24-cv-20684-KMM**

NOACH NEWMAN, ADIN GESS,
and NATALIE SANANDAJI,

      Plaintiffs,

v.

THE ASSOCIATED PRESS,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

BALLARD SPAHR LLP

Charles D. Tobin (Fla. Bar No. 816345)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com

R. Stephen Stigall (*pro hac vice*)
Elizabeth Seidlin-Bernstein (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
stigalls@ballardspahr.com
seidline@ballardspahr.com

*Attorneys for Defendant The Associated Press*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .....................................................................................................3

ARGUMENT .............................................................................................................................8

I.     The Second Amended Complaint fails to state a claim for aiding and abetting
       under the federal ATA and JASTA (Count I) ................................................................8

       A.     Plaintiffs still have not pled, and cannot plead or prove, that The AP
              was generally aware of its alleged role in terrorist activities ..................................9

       B.     Plaintiffs still have not pled, and cannot plead or prove, that The AP
              knowingly and substantially assisted Hamas in carrying out the
              October 7 attack ...........................................................................................14

II.    The Second Amended Complaint fails to state a claim for direct liability
       under the federal ATA (Counts II and III) ...................................................................18

       A.     Plaintiffs still have not pled, and cannot plead or prove, that The AP
              committed an act of international terrorism ..........................................................18

       B.     Plaintiffs still have not pled, and cannot plead or prove, that The AP
              acted with the requisite scienter ......................................................................19

       C.     Plaintiffs still have not pled, and cannot plead or prove, that The AP
              proximately caused their alleged injuries ...........................................................21

III.   The Second Amended Complaint fails to state a claim under Florida's ATA
       (Count IV) .....................................................................................................................22

IV.    Even if the Court were to disagree with all of the foregoing, the Second
       Amended Complaint nevertheless should be dismissed because The AP's
       journalism is protected by the First Amendment ..............................................................23

CONCLUSION ........................................................................................................................26

REQUEST FOR HEARING .....................................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Dental Association v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...........................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................2

*Associated Press v. United States*,
    326 U.S. 1 (1945) .................................................................................................................23

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ......................................................................................................23, 24

*Bowens v. Superintendent of Miami South Beach Police Department*,
    557 F. App'x 857 (11th Cir. 2014) .....................................................................................23

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ...............................................................................................................25

*Colon v. Twitter, Inc.*,
    14 F.4th 1213 (11th Cir. 2021) ..........................................................................................21

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021) ............................................................................................25

*Counterman v. Colorado*,
    600 U.S. 66 (2023)........................................................................................................24, 25

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) .............................................................................................22

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989).............................................................................................................24

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010).........................................................................................................20, 25

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)..............................................................................................................23

*Kaplan v. Al Jazeera*,
    2011 WL 2314783 (S.D.N.Y. June 7, 2011) ................................................................19, 22

*Mazzeo v. Nature's Bounty, Inc.*,
    2015 WL 1268271, 3 (S.D. Fla. Mar. 19, 2015)....................................................13

*Meeks v. Murphy Auto Group, Inc.*,
    2009 WL 3669638 (M.D. Fla. Oct. 30, 2009) ........................................................13

*Muzaffarr v. Ross Dress for Less, Inc.*,
    2013 WL 1890274 (S.D. Fla. May 7, 2013) ..........................................................10

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................................24

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ..........................................................................21, 22

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) .................................................................................................24

*Snyder v. Phelps*,
    562 U.S. 443 (2011) .................................................................................................23

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .................................................................................................24

*Talley v. Time, Inc.*,
    923 F.3d 878 (10th Cir. 2019) ................................................................................24

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .................................................................................................15

**Statutes**

18 U.S.C. § 2331 ................................................................................................................18

18 U.S.C. § 2333 ................................................................................................18, 19, 23

18 U.S.C. § 2339A ............................................................................................18, 19, 21

18 U.S.C. § 2339B ..................................................................................................18, 20

Fla. Stat. § 772.13 .............................................................................................................23

Fla. Stat. § 775.30 .............................................................................................................22

In dismissing Plaintiffs' Amended Complaint, this Court expressed "doubt that Plaintiffs' allegations can be repleaded to state a viable claim based on the Court's understanding of Plaintiffs' theory of the case."  Dec. 10, 2024 Order ("Order") at 33 (ECF No. 98).  That doubt has been realized, as Plaintiffs' third attempt at pleading a viable Complaint fares no better than their prior two undertakings.  Defendant The Associated Press ("The AP") thus moves to dismiss Plaintiffs' Second Amended Complaint ("SAC") with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and under the First Amendment to the United States Constitution.

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiffs erroneously attempt to hold The AP liable for the emotional distress they suffered as a result of the October 7, 2023 attack on the State of Israel.  On that day, Hamas-led militants breached the border that separates Gaza and Israel and launched a massive attack against Israel, committing widespread atrocities and terrorizing the country.  Hamas killed more than 1,200 people during the attack, most of them civilians, and kidnapped 250 more.  The carnage, destruction, and devastation were immeasurable.

In response, The AP did what it has always done since the news organization's founding 180 years ago: gather and publish timely, accurate, and factual news of the unfolding events in order to keep a concerned world informed of the attack.  The subject matter of those news accounts undoubtedly was horrifying.  But that is the role of a free and independent press – to document such atrocities, without fear or favor; to show what is actually happening on the ground; and to ensure that the public is informed in real time.

Plaintiffs, however, reject the rich tradition of reporting breaking news from conflict zones and instead claim that The AP is liable to them under the federal Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), and the

1

Florida ATA, based on The AP's publication of accurate photographs of the attack taken by Palestinian freelance photographers. The AP has profound sympathy for Plaintiffs' suffering, but there is no legal basis on which to hold The AP liable for the atrocities committed by Hamas that day.

Plaintiffs' newest Complaint fits squarely within their pattern of failed efforts to plead dubious claims. On February 21, 2024, Plaintiffs filed their original Complaint, which The AP moved to dismiss. Rather than responding to The AP's motion, Plaintiffs filed an Amended Complaint. This Court granted The AP's renewed motion to dismiss the Amended Complaint, expressing doubt that Plaintiffs could replead to state viable claims but giving them one last "opportunity to attempt to cure the fundamental issues" the Court had identified. Order at 33. A smaller group of Plaintiffs then filed the Second Amended Complaint, which is the subject of this motion to dismiss. The Second Amended Complaint drops two claims but otherwise rehashes the same theories of liability that this Court has already soundly rejected, without any meaningful changes to the factual allegations underlying them.

Simply stated, Plaintiffs have had enough chances "to state a claim to relief that is plausible on its face," and they still cannot do so. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Their claim for aiding and abetting terrorism under the federal ATA should be dismissed because the factual allegations in the Second Amended Complaint continue to fall far short of establishing that The AP was generally aware of its alleged role in terrorist activities or provided knowing and substantial assistance to Hamas by publishing accurate information about the events of October 7. Plaintiffs' claims for direct liability under the federal ATA and its Florida counterpart should also be dismissed because the Amended Complaint does not plausibly plead

that The AP committed an act of terrorism, that it acted with a culpable state of mind, or that it proximately caused Plaintiffs' emotional distress.

Furthermore, even if Plaintiffs' causes of action were otherwise plausibly pleaded, the unprecedented application of them to The AP's news reporting would violate the First Amendment.  The AP is not aware of any case in which a court has permitted analogous claims to proceed against a news organization, and for good reason:  Doing so inevitably would chill protected speech and deprive the public of essential information about world events.  The pain and suffering experienced by Plaintiffs as a result of the October 7 attack, grievous though it may be, cannot justify abandoning our Nation's longstanding commitment to protect the publication of truthful information on matters of public concern.

For all of these reasons, Plaintiffs' claims should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

On the morning of October 7, 2023, large numbers of Hamas-led militants crossed the border from Gaza into Israel and perpetrated a deadly attack on civilians at the Nova music festival, Kibbutz Holit, and other sites.  SAC ¶¶ 1, 26-27.  All told, Hamas killed over 1,200 people, injured over 6,900 people, and kidnapped 239 people that day.  *Id.*  ¶ 1.

According to the Second Amended Complaint, Plaintiffs experienced "severe mental anguish, extreme emotional pain, and suffering" as a result of the October 7 attack.  *Id.* ¶¶ 26-28.  Natalie Sanandaji attended the Nova music festival and witnessed the attack firsthand, eventually escaping to safety.  *Id.* ¶ 28.  Hamas killed Noach Newman's brother at the same festival.  *Id.*

---

[1] For purposes of this motion only, The AP accepts Plaintiffs' factual allegations as true.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (court considering motion to dismiss must assume well-pleaded factual allegations are true).  Conclusory allegations, on the other hand, are not entitled to an assumption of truth and should be disregarded.  *Id.*

¶ 26.  Adin Gess was evacuated from Kibbutz Holit and lost his home, his belongings, and members of his community to the attack.  *Id.* ¶ 27.

The AP is a not-for-profit news agency that reports on breaking news events around the world.  *Id.* ¶ 29.  Like other major news organizations, The AP reported on the October 7 attack as it unfolded, by publishing photos and articles that day about the conduct of Hamas militants. *Id.* ¶ 3.  Palestinian freelance photographers Hassan Eslaiah, Yousef Masoud, Ali Mahmud, and Hatem Ali (collectively, the "Freelance Photographers") took a small subset of the photos The AP published that day.  *Id.*  Plaintiffs do not contend that any of those photos were inaccurate.[2] *See id.* ¶¶ 91-101.

According to Plaintiffs, the Freelance Photographers "were longstanding Hamas affiliates, propagandists, and full participants in the very terrorist attack that they were also documenting."  *Id.* ¶ 9.  In support of this claim, Plaintiffs rely heavily on personal social media posts by one of the Freelance Photographers, Eslaiah, which they allege indicate that he sympathized with Hamas and was on "friendly terms" with its members.  *Id.* ¶¶ 55-58, 72-76, 79, 82-83, 87 & Exs. E, F.  Plaintiffs speculate that Eslaiah and the other Freelance Photographers could not have safely gained access to photograph the October 7 attack without press credentials unless they had Hamas affiliations.  *Id.* ¶¶ 71, 81, 86, 95-101.  They also assert, without any factual support, that the Freelance Photographers must have known about the attack in advance because they "arrived at roughly the same time as the initial Hamas terrorists who breached entry

---

[2] Indeed, in their opposition to The AP's motion to stay discovery, Plaintiffs stated that they "agree that AP may publish pictures like the ones referenced in the Amended Complaint and certainly do not challenge the importance of the news media reporting and documenting their reporting with pictures."  Opp. to Mot. to Stay at 6 (ECF No. 41).

4

into the State of Israel,"[3] *id.* ¶ 68, and they allege "[u]pon information and belief" that the Freelance Photographers returned to Gaza alongside the Hamas militants, *id.* ¶¶ 85, 90.  In the Second Amended Complaint, Plaintiffs further allege that the Freelance Photographers, as "credentialed journalist photographers," "enjoyed a privileged position within Gaza due to their work on behalf of Hamas."  *Id.* ¶ 7.

Plaintiffs do not allege that the Freelance Photographers themselves killed or injured anyone during Hamas' violent attack October 7.  They also do not allege that The AP knew about the October 7 attack in advance or wanted to help bring it about – to the contrary, Plaintiffs recognize that The AP's motivation in publishing the images taken by the Freelance Photographers was to report breaking news of international concern.  *See, e.g.*, *id.* ¶ 114 (The AP worked with the Freelance Photographers "for content"); *id.* ¶ 116 (The AP sought to "obtain[] access to footage that is difficult to secure"); *id.* ¶ 124 (The AP's objective was "to generate content for their news media vehicle").

Nor do Plaintiffs plead any facts that would establish The AP had actual knowledge that publishing the photos would in some way further the October 7 attack.  Instead, Plaintiffs maintain that The AP "knew, or at the very least should have known, through simple due diligence," that the Freelance Photographers were affiliated with Hamas and participating in the attack.  *Id.* ¶ 9.  The centerpiece of Plaintiffs' theory is that, more than six years ago, a "watchdog organization" called the Committee for Accuracy in Middle East Reporting in America ("CAMERA") sent emails that allegedly put The AP on notice of Eslaiah's purported

---

[3] To the contrary, according to Plaintiffs' own factual allegations, the militants entered Israel at approximately 6:30 a.m. and Eslaiah first posted from inside Israel two hours later, at 8:29 a.m.  SAC ¶¶ 72-74.  Plaintiffs offer no factual allegations at all regarding the other Freelance Photographers' alleged entry into and exit from Israel.

ties to Hamas.  *Id.* ¶¶ 51-52, 58 & Exs. B, C, F.  In those emails, CAMERA challenged The AP's reliance on an eyewitness source named "Hassan Isleih" for an article about the death of a four-year-old boy in Gaza, asserting that "Isleih" worked for a "Hamas-affiliated" news outlet and had "openly identifie[d] with Hamas' political platform" on social media.  *Id.* ¶ 51 & Exs. B, C.  There was no discussion of "Isleih" working with The AP as a freelance photographer.  With respect to the other Freelance Photographers' supposed affiliations with Hamas, Plaintiffs allege only that they were "conspicuous, of long duration, and easily ascertainable by anyone associated with them," without any factual details.  *Id.* ¶ 59.

In the Second Amended Complaint, Plaintiffs make the baseless assertion that The AP was "aware of its role as a conduit of Hamas' messaging."  *Id.* ¶ 14.  In support of this notion, they attach the Expert Report of Lara Burns (the "Burns Report"), which does not reference The AP or the Freelance Photographers but opines that "Hamas has intentionally sought to use the media to promote its agenda and garner support for its terror."  *Id.* Ex. Q at 4.  Plaintiffs also reiterate the groundless conspiracy theory that when an Israeli airstrike destroyed a high-rise office building used by The AP in Gaza in 2021, The AP "blatantly lied and pretended that [it] did not know anything about sharing offices with Hamas."  *Id.* ¶ 39; *see also id.* ¶¶ 14, 38, 61.  And Plaintiffs point to two decade-old essays by a former AP editor in Israel who claimed that The AP refrained from reporting certain stories out of Gaza because of threats to journalists' safety from Hamas.  *Id.* ¶¶ 14, 38, 62; *see also* Matti Friedman, *What the Media Gets Wrong About Israel*, THE ATLANTIC (Nov. 30, 2014), https://www.theatlantic.com/international/archive/2014/11/how-the-media-makes-the-israel-story/383262/; Matti Friedman, *An Insider's Guide to the Most Important Story on Earth*, TABLET (Aug. 26, 2014), https://www.tabletmag.com/sections/israel-middle-east/articles/israel-insider-guide.

As in their earlier pleadings, Plaintiffs contend that The AP's publication of images taken by the Freelance Photographers contributed to the October 7 attack in the following ways: (1) the Freelance Photographers "substantially contributed to the sheer mass of people that illegally infiltrated Israel," which increased the "logistical and tactical" burden on the country in responding to the attack, SAC ¶¶ 150, 168, (2) the Freelance Photographers' "presence and encouragement increased the terror" felt by Israeli civilians, *id.* ¶ 110, (3) the Freelance Photographers, and by extension Hamas, received a monetary benefit from The AP's payments for the photographs, *id.* ¶¶ 114, 121, and (4) The AP's "imprimatur" on the Freelance Photographers and their images had propaganda value for Hamas, which "galvanized the attack" and helped Hamas gain public support internationally, *id.* ¶¶ 111, 115, 118, 120, 122-125.

Plaintiffs originally asserted claims for aiding and abetting, conspiracy, and direct liability under the ATA and JASTA, as well as two state-law claims. The AP filed a motion to dismiss the original Complaint on April 22, 2024 (ECF No. 29). Rather than opposing the motion, Plaintiffs elected to file an Amended Complaint (ECF No. 40). The AP filed a renewed motion to dismiss the Amended Complaint on May 28, 2024 (ECF No. 48). While that motion was pending, The AP completed its production of documents responsive to Plaintiffs' discovery requests on October 29, 2024 (ECF No. 88 at 1).[4]

The Court granted The AP's motion to dismiss the Amended Complaint without prejudice on December 10, 2024. While expressing "doubt that Plaintiffs' allegations can be repleaded to state a viable claim based on the Court's understanding of Plaintiffs' theory of the case," the Court provided Plaintiffs with one more "opportunity to cure the fundamental issues"

---

[4] In contrast, Plaintiffs have only produced 15 pages of documents in response to The AP's discovery requests.

it had identified.  Order at 33.  Plaintiffs filed their Second Amended Complaint on December 31, 2024.

Two of the original Plaintiffs, Maya Parizer and Yoni Diller, have withdrawn from this lawsuit.  *Compare* Am. Compl. at 1 with SAC at 1.[5]  The remaining Plaintiffs have dropped their claims for conspiracy under the federal ATA and JASTA and for negligent infliction of emotional distress.  *Compare* Am. Compl. Counts I-VI *with* SAC Counts I-IV.  They now assert four claims.  In Count I, Plaintiffs claim that The AP aided and abetted an act of international terrorism under the federal ATA and JASTA.  In Counts II and III, they claim that The AP is directly liable for an act of international terrorism under the federal ATA because it allegedly provided material support to Hamas.  In Count IV, Plaintiffs claim that The AP is directly liable for an act of terrorism under Florida's version of the ATA.

As explained below, the Second Amended Complaint does not "cure the fundamental issues" this Court identified in its prior ruling, Order at 33, and it should therefore be dismissed with prejudice.

## ARGUMENT[6]

**I.      The Second Amended Complaint fails to state a claim for aiding and abetting under the federal ATA and JASTA (Count I).**

A claim for aiding and abetting an act of international terrorism under the federal ATA and JASTA "includes three elements: (1) 'the party whom the defendant aids must perform a

---

[5] For the Court's convenience, The AP is providing a comparison of the Amended Complaint to the Second Amended Complaint generated through the Workshare Compare tool.  *See* Decl. of Elizabeth Seidlin-Bernstein Ex. 1.

[6] In order to focus on the new allegations set forth in the Second Amended Complaint, The AP does not repeat each of the arguments made in its motion to dismiss the Amended Complaint (ECF No. 48), but instead incorporates those prior arguments by reference.

wrongful act that causes an injury'; (2) 'the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance'; and (3) 'the defendant must knowingly and substantially assist the principal violation.'"  Order at 7 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  This Court held that Plaintiffs failed to plausibly allege the second and third elements of aiding and abetting in the Amended Complaint.  *Id.* at 7-17.  The Second Amended Complaint suffers from the same deficiencies.

> A.   **Plaintiffs still have not pled, and cannot plead or prove, that The AP was generally aware of its alleged role in terrorist activities.**

The second element of aiding and abetting requires Plaintiffs to plausibly plead that The AP was "generally aware" it was "itself assuming a role in terrorist activities" by purchasing and publishing photographs taken by the Freelance Photographers.  Order at 7 (quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).  This Court correctly concluded that the factual allegations in the Amended Complaint were insufficient to establish general awareness.  Order at 9-10.  The same is true of the Second Amended Complaint.

The Court initially noted that "the Freelance Photographers should not be construed as members of the AP," pointing to the absence of any allegation that the Freelance Photographers "were actively working for the AP at the time of the October 7 Attack."  Order at 8-9.  In an attempt to show that the Freelance Photographers' freelance status "does not mitigate AP's relationship with them," SAC ¶ 50, Plaintiffs attach to the Second Amended Complaint two documents The AP produced in discovery, *id.* ¶¶ 50, 53.  Neither of them establishes that the Freelance Photographers were "a part of the AP for purposes of the claims" in this case.  Order at 9.

*First*, Plaintiffs attach an October 30, 2023 WhatsApp exchange between The AP's Jerusalem Bureau Chief Josef Federman and his counterpart at CNN, Richard Greene, in which

Federman said he was "[p]retty sure" Eslaiah was freelancing for The AP full time.  SAC ¶ 50 & Ex. A.  These messages – which took place three weeks *after* the October 7 attack, when The AP's reporting needs had changed due to the war in Gaza – say nothing about the nature of Eslaiah's work with The AP on or before October 7.  If anything, they confirm that Eslaiah was a freelancer, not an employee of The AP.  Though Plaintiffs ignore the rest of the conversation, in the same exchange Greene told Federman that Eslaiah was also freelancing for CNN, thus reinforcing that Eslaiah was an independent photojournalist who could offer photos to any news organization he wished.



*Second*, Plaintiffs attach ██████████████████████████████████ ████████████████████████████████████[7]  SAC Ex. D.  Plaintiffs blatantly mischaracterize this document, suggesting that it contains ████████ ████████████████████████████  SAC ¶ 53.  ████████ ████████████████████████████████████ ████████████████████████████████ ██████████████████████████████████ ████████[8]  SAC Ex. D at 9.  ██████████████ ████████████████████████████████████ ████████████████████████████  *Id.* at 9-10.

---

[7] The AP has redacted portions of this motion that reflect the contents of documents designated as confidential pursuant to the August 21, 2024 Protective Order (ECF No. 66).  It will file a separate motion to file the unredacted motion under seal.

[8] Although "there is no rule against hearsay statements in pleadings," *Muzaffarr v. Ross Dress for Less, Inc.*, 2013 WL 1890274, at *2 (S.D. Fla. May 7, 2013), The AP notes that this statement does not constitute a party admission and contains multiple levels of hearsay.

As a fallback, Plaintiffs also allege that the Freelance Photographers "did not need to be directed by AP to take photos and videos as their remuneration by AP for content had, by October 7, 2023, become standard practice."  SAC ¶ 15.  They do not plead any facts about the frequency or nature of the Freelance Photographers' prior work for The AP, nor do they allege that The AP would automatically purchase every photo that the Freelance Photographers offered. Plaintiffs' new allegation is no different than their prior one that the Freelance Photographers had an "expectation" that The AP would pay for their photos based on a history of past purchases, *id.* ¶ 107, which this Court has already concluded did not make them "a part of the AP," Order at 9.

More importantly, as this Court has already recognized, even if someone at The AP had directed Eslaiah or the other Freelance Photographers to cover the October 7 attack, it would not plausibly demonstrate that The AP was generally aware that assigning photographers to take pictures for news reporting purposes would in some way contribute to the attack.  Order at 9-10. Nothing in the Second Amended Complaint changes that.  Plaintiffs' new allegation that The AP is "a news agency that allegedly vets its sources and is and was well aware of the activities of these specific" Freelance Photographers, SAC ¶ 12, is wholly conclusory and should be disregarded.  Order at 5 ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (quoting *Oxford Asset Mgm't, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

With respect to Eslaiah, Plaintiffs now point to internal emails exchanged among AP employees in response to emails from CAMERA in 2018, SAC ¶¶ 51-52 & Exs. B-C, which Plaintiffs contend put The AP "on actual notice via email of Hassan Eslaiah's affiliation with Hamas," SAC ¶ 131.  Plaintiffs omit relevant context about these communications.  As is apparent from the face of the emails, The AP's journalists and CAMERA were discussing

11

Eslaiah – referred to as "Hassan Isleih" – as an eyewitness source for a story about the death of a 4-year-old boy in Gaza.  SAC Exs. B-C.  ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ SAC ¶ 51.  This does not show that Federman or any other AP employee made the connection between "Isleih" the eyewitness source for a single story in 2018 and Eslaiah the photographer who freelanced for The AP several years later, nor that Eslaiah had any affiliation with Hamas when he worked with The AP.  Regardless, this Court has already held that even if The AP *knew* that Eslaiah had ties to Hamas, such knowledge would not be sufficient to establish that The AP was aware of any role of its own in terrorist activities.  Order at 9-10.

With respect to the other Freelance Photographers, this Court correctly concluded that Plaintiffs' allegations about their close proximity to Hamas militants when taking pictures on October 7 failed to suggest that the Freelance Photographers "were taking part in the attack rather than simply documenting it as unaffiliated journalists."  Order at 10.  Plaintiffs add an allegation to the Second Amended Complaint that, "[p]er the State of Israel, all of [the Freelance Photographers] were at the very least accomplices to crimes against humanity."  SAC ¶ 8.  But this is only a legal conclusion, not a factual allegation about the Freelance Photographers' conduct on October 7.  The Second Amended Complaint still lacks any factual allegations that would show the Freelance Photographers took part in the violence and kidnapping that Hamas perpetrated.

Finally, the Court correctly held that Plaintiffs' allegations that Hamas uses photographs "as a tool of propaganda" failed to show how The AP "would have been aware that its publication of truthful images was in some way furthering Hamas's terrorist activities and

mission."  Order at 10.  In the Second Amended Complaint, Plaintiffs attach the Burns Report, which opines that "Hamas has intentionally sought to use the media to promote its agenda and garner support for its terror."  SAC Ex. Q at 3.[9]  They also quote portions of the Hamas Charter of 1988 to show that the "use of the media to further Hamas aims is not a strategy that Hamas happened upon but rather an explicit directive."  SAC ¶¶ 44-48.  But these sources demonstrate only that Hamas *seeks* to use institutions like the media to further its interests – not that The AP or any other independent media organization shares the same goal or helps Hamas to achieve it.

Plaintiffs also add a conclusory allegation that The AP's coverage of the October 7 attack "did not constitute independent reporting but rather the publication of pro-Hamas content."  *Id.* ¶ 146.  They make no effort, however, to explain how the undisputedly accurate photos published by The AP served to "sanitize and glorify Hamas' terrorism in the eyes of the world," *id.* ¶ 13, or how The AP could have known the photos would have that alleged effect.  Indeed, under Plaintiffs' theory, seemingly any image of an ongoing terrorist attack would constitute terrorist propaganda, making breaking news coverage impossible.

Plaintiffs also repeat their allegations that The AP acquiesced to restrictions by Hamas on the subject matter of its reporting in Gaza.  SAC ¶¶ 14, 38.  Even if that were true, it would not convert The AP's news coverage into Hamas propaganda, any more than complying with Israeli censorship laws would render it Israeli propaganda.  *See* Emanuel Fabian, *Gantz taps Kobi Mandelblit to serve as next military censor*, THE TIMES OF ISRAEL (Mar. 24, 2022), https://www.timesofisrael.com/gantz-taps-kobi-mandelblit-to-serve-as-next-military-censor/

---

[9]  The opinions expressed in the Burns Report are not appropriate for consideration on a motion to dismiss, and the entire report should be stricken from the Second Amended Complaint.  *See, e.g.*, *Mazzeo v. Nature's Bounty, Inc.*, 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015); *Meeks v. Murphy Auto Grp., Inc.*, 2009 WL 3669638, at *1 (M.D. Fla. Oct. 30, 2009).

("Under Israeli law, all news articles – in both traditional media and social media – dealing with national security and related issues must be approved by the [military] censor before publication.").

In short, the Second Amended Complaint still fails to plead facts sufficient to establish that The AP was generally aware of its alleged role in terrorist activities, and it should be dismissed for this reason alone.

> **B.    Plaintiffs still have not pled, and cannot plead or prove, that The AP knowingly and substantially assisted Hamas in carrying out the October 7 attack.**

The third element of aiding and abetting requires Plaintiffs to "plausibly allege that the AP 'knowingly and substantially assist[ed] the principal violation.'"  Order at 10 (quoting *Halberstam*, 705 F.2d at 477).  This Court previously concluded that the Amended Complaint failed to plead "knowing assistance" because "a defendant who lacks general awareness" of playing a role in terrorist activities also "cannot be said to have knowingly assisted" a foreign terrorist organization.  *Id.* at 12 (citing *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 836, 870 (D.C. Cir. 2022)).  Having again failed to plead facts sufficient to show general awareness in the Second Amended Complaint, Plaintiffs cannot meet the knowing assistance requirement either.

This Court also recognized as an "independent and alternative ground for dismissal" that Plaintiffs failed to allege that The AP provided "substantial assistance" to Hamas "pursuant to the six *Halberstam* factors."[10]  Order at 13.  The Court considered the first two factors – "the nature of the act assisted" and the "amount of assistance" provided – together and found that the

---

[10] Those factors include "(1) 'the nature of the act assisted,' (2) the 'amount of assistance' provided, (3) whether the defendant was 'present at the time' of the principal tort, (4) the defendant's 'relation to the tortious actor,' (5) the 'defendant's state of mind,' and (6) the 'duration of the assistance' given."  Order at 10 (quoting *Halberstam*, 705 F.2d at 484).

Amended Complaint did "not plausibly allege that Hamas received any financial support from the AP" through the purchase of photographs on October 7.  *Id.* at 14-15.  In their Second Amended Complaint, Plaintiffs attempt to address this fundamental flaw in their case by asserting that anyone who lives in Gaza, where Hamas controls "virtually all aspects of civilian life," and who acts "in coordination with" or at the direction of the regime in some way, is effectively a "member" of Hamas.  SAC ¶ 5.  They further contend that the Freelance Photographers "enjoyed a privileged position within Gaza due to their work on behalf of Hamas" as "credentialed journalist photographers," *id.* ¶ 7, and that The AP's payments in exchange for photos therefore went directly to "members" or "agents" of Hamas, *id.* ¶¶ 11-15.  Plaintiffs do not offer any new facts about the alleged relationship between Hamas and the Freelance Photographers to support this theory.  Instead, they rely on the Burns Report, which does not discuss The AP or the Freelance Photographers at all.  *See generally* SAC Ex. Q.  Moreover, Plaintiffs' theory would essentially transform any civilian in Gaza into a member or agent of Hamas.  Merely purchasing goods or services from someone who meets that incredibly broad definition cannot constitute the type of "truly culpable conduct" that JASTA's aiding and abetting provision is meant to address.  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023).

In its analysis of the first and second *Halberstam* factors, this Court also emphasized that the Amended Complaint contained no "specific allegations regarding the amount of money and other assistance" that supposedly went to Hamas as a result of The AP's purchase of photos.  Order at 15 (citing cases involving allegations of "millions of dollars" of assistance to terrorist groups).  Plaintiffs still do not allege any specific amount of money paid by The AP to the Freelance Photographers.  *See Taamneh*, 598 U.S. at 505-06 (allegations "that Google reviewed and approved ISIS videos on YouTube as part of its revenue-sharing system and thereby shared

advertising revenue with ISIS," without any allegations "about the amount of money that Google supposedly shared," did not plausibly plead substantial assistance).  Thus, their allegations remain "inadequate to establish that any amount of money or assistance from the AP went to Hamas."  Order at 15.

The Court also concluded that the Amended Complaint did not satisfy the third *Halberstam* factor – "whether the defendant was 'present at the time' of the principal tort" – because The AP was not "physically present" for the October 7 attack and its alleged history of paying the Freelance Photographers in exchange for photos did not make it present for the attack "in a transactional sense."  Order at 15-16.  So too for the Second Amended Complaint, for the reasons stated above.  In any event, as the Court noted, "this factor is not normally entitled to much weight in this context."  *Id.* at 16 (quoting *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 350 (E.D.N.Y. 2023)).

The Court gave the fourth *Halberstam* factor – "the defendant's relation to the tortious actor" – "lower priority" because the Amended Complaint did "not allege that the Freelance Photographers participated in the tortious conduct" or that there was "a direct link between the AP and Hamas."  Order at 16.  The same is true of the Second Amended Complaint as well.

For the fifth *Halberstam* factor – the "defendant's state of mind" – the Court found that The AP's "purchase of certain photographs, similar to several other media organizations, is a far cry from an active business partnership" that would evidence "an 'intention to participate in an ongoing illicit enterprise.'"  *Id.* (quoting *Halberstam*, 705 F.2d at 484).  In the Second Amended Complaint, Plaintiffs add conclusory allegations to the effect that The AP "was aware of its role as a conduit of Hamas' messaging."  SAC ¶ 14; *see also id.* ¶ 9 (alleging that The AP was on notice of "the ways that Hamas uses foreign media generally and the AP specifically to spread its

tailored propaganda").  In support of this theory, Plaintiffs repackage two allegations they already made in the Amended Complaint without success.  First, they again advance the unsupported conspiracy theory that when an Israeli airstrike destroyed a high-rise office building used by The AP in Gaza in 2021, The AP "blatantly lied and pretended that [it] did not know anything about sharing offices with Hamas."  *Id.* ¶ 39; *see also id.* ¶¶ 14, 38, 61.[11]  Then, they quote from two essays by a former AP editor in Israel who claimed that The AP chose not to report on certain topics from Gaza because of intimidation by Hamas.  *Id.* ¶¶ 14, 38, 62.  Even if these claims of sharing office space and self-censorship were true, they would not demonstrate that The AP believed it was affirmatively disseminating Hamas propaganda by publishing the photographs at issue on October 7.  Electing *not* to publish certain information does not equate to actively spreading false information at the behest of Hamas.

Finally, for the sixth *Halberstam* factor – "the defendant's duration of assistance" – the Court concluded that, "even assuming the AP had a series of transactions with the Freelance Photographers over a period of several years, Plaintiffs do not suggest that the length of such relationship aided terrorism, outside of the conclusory allegations that the AP was a direct funding source for Hamas."  Order at 16-17.  The same can be said of the Second Amended Complaint.

---

[11] The apparent source for this theory is the 2021 opinion piece quoted at length in paragraph 38 of the Second Amended Complaint, which asserted that "AP reporters certainly knew they had Hamas neighbors" in their office building.  *See* Lee Smith, Let's Talk About Reporting in War Zones, Tablet (May 19, 2021), https://www.tabletmag.com/sections/israel-middle-east/articles/associated-press-hamas-gaza-lee-smith.  The only basis offered for the claim in the piece is a social media post by a former National Security Council spokesperson stating, "I talked to someone who *used* to work out of that building periodically who said he believed there may have been Hamas offices there."  *Id.* (citing https://x.com/TVietor08/status/1393933086748921861).

Because the factual allegations do not show that The AP knowingly and substantially assisted Hamas in carrying out the October 7 attack, the Second Amended Complaint should be dismissed.

**II.     The Second Amended Complaint fails to state a claim for direct liability under the federal ATA (Counts II and III).**

Plaintiffs continue to assert two direct liability claims under the federal ATA, which permits a civil cause of action for injury "by reason of an act of international terrorism." 18 U.S.C. § 2333(a).  Specifically, they claim that The AP provided material support to terrorists in violation of 18 U.S.C. § 2339A (Count II) and material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B (Count III).

In its prior ruling, this Court dismissed Plaintiffs' direct liability claims for three independent reasons – failure to plead an act of international terrorism, failure to plead scienter, and failure to plead proximate cause – each of which applies equally to the Second Amended Complaint.

**A.     Plaintiffs still have not pled, and cannot plead or prove, that The AP committed an act of international terrorism.**

Both of Plaintiffs' direct liability claims should be dismissed because the Second Amended Complaint does not plead facts that would establish The AP committed "an act of international terrorism," as Section 2333(a) requires.  Under the statute, a defendant's activities constitute "international terrorism" if they (a) "involve violent acts or acts dangerous to human life" in violation of U.S. criminal law, 18 U.S.C. § 2331(1)(A), and (b) "appear to be intended" to achieve certain specified terrorist purposes, *i.e.*, "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," *id.* § 2331(1)(B).

As in their earlier pleadings, Plaintiffs' allegations of material support in the Second Amended Complaint "boil down to (1) payments and (2) propaganda." Order at 23; *see also* Compl. ¶¶ 145, 158. This Court previously held that "the exchange of payments for photographs regarding issues of public concern" is "akin to an arms-length transaction" that does not give rise to an appearance of intent to achieve terrorist purposes. Order at 25. It also held that "the AP's actions, working with photographers and reporters during the course of breaking news, cannot plausibly suggest that the AP intended to carry out the goals of Hamas." *Id.* at 24; *see also Kaplan v. Al Jazeera*, 2011 WL 2314783, at *6 (S.D.N.Y. June 7, 2011) ("Unlike a financial donation to a terrorist organization, news coverage of the activities of a terrorist organization can serve an entirely different and acceptable purpose, namely, delivering important information to the public."). The Second Amended Complaint contains no new factual allegations that would undermine these conclusions.

Accordingly, the direct liability claims should be dismissed for failure to plead that The AP committed "an act of international terrorism" pursuant to Section 2333(a).

**B.    Plaintiffs still have not pled, and cannot plead or prove, that The AP acted with the requisite scienter.**

This Court also held that Plaintiffs' direct liability claims could not stand because Plaintiffs had failed to show the degree of scienter required for either. It should reach the same determination as to the Second Amended Complaint.

Under Section 2339A, Plaintiffs must establish that The AP provided material support to Hamas "with the specific knowledge or intent that its support would be used in preparation for, or in carrying out, one of the enumerated terrorism-related crimes." Order at 26 (quoting *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1309 (S.D. Fla. 2018)). As this Court recognized, even if the Amended Complaint contained allegations that might "adequately

support that the AP was on *notice* of the Freelance Photographers' relationship with Hamas,"
such notice "falls short of the AP's independent knowledge or intent that any payments, or
publication of events would be used in furtherance of Hamas's mission."  Order at 27.  In the
Second Amended Complaint, Plaintiffs seek to overcome this hurdle by alleging more forcefully
that The AP "knew" the Freelance Photographers were "members of Hamas", SAC ¶ 15, and that
"its payments for content were going to agents of Hamas," *id.* ¶ 14.  But, absent factual support,
these conclusory allegations are not entitled to any weight.  Order at 5.  Indeed, elsewhere in the
Second Amended Complaint, Plaintiffs continue to assert that The AP was only on "notice" of
the Freelance Photographers' alleged Hamas affiliations, *e.g.*, SAC ¶¶ 9, 149  – a tacit admission
that there is no evidence of knowledge or intent.

Under Section 2339B, Plaintiffs must show that The AP "knowingly provide[d] material
support or resources to a foreign terrorist organization."  With respect to The AP's payments to
the Freelance Photographers, this Court properly held that the Amended Complaint did "not
adequately plead the extent of the AP's knowledge of the Freelance Photographers acting as a
conduit to Hamas" or themselves engaging in terrorist activities.  Order at 30.  The Second
Amended Complaint does no better in this regard, for the reasons explained above.  With respect
to The AP's publication of photos taken by the Freelance Photographers, this Court agreed with
The AP that "any publication of factual, newsworthy photographs would not satisfy the scienter
requirement" under Section 2339B because it is The AP's independent, constitutionally protected
speech.  Order at 28-29; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 26, 36
(2010).  Plaintiffs' allegation in the Second Amended Complaint that The AP's "coverage of the
events of October 7, 2023 did not constitute independent reporting but rather the publication of

pro-Hamas content at the behest and arrangement of Hamas" is, once again, unsupported by any

facts and does not alter the analysis.  SAC ¶ 146.

Because the factual allegations in the Second Amended Complaint do not satisfy the

scienter standard for material support under Sections 2339A or 2339B, Plaintiffs' direct liability

claims under the federal ATA should be dismissed.

### C.    Plaintiffs still have not pled, and cannot plead or prove, that The AP proximately caused their alleged injuries.

This Court further concluded that Plaintiffs' direct liability claims were subject to

dismissal for the additional reason that the Amended Complaint failed to plead proximate cause.

The Supreme Court and the Eleventh Circuit have not defined the precise contours of proximate

cause for direct liability claims under the ATA.  *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1223

(11th Cir. 2021) (noting that "federal courts have set out conflicting versions of proximate

cause" in this context, without deciding the issue).  In its prior decision, this Court adopted the

"substantial factor" standard, Order at 31, under which Plaintiffs must show that The AP's "acts

were a substantial factor in the sequence of events that led to their injuries," and that (2) their

injuries were "reasonably foreseeable or anticipated as a natural consequence" of the defendant's

conduct, *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018).

The Court determined that Plaintiffs had "not alleged any facts suggesting that the AP's

factual reporting was used by Hamas to advance the October 7 Attack, thereby causing

Plaintiffs' injuries."  Order at 31.  As the Court noted, Plaintiffs had not even pleaded facts to

suggest that Hamas actually used the images The AP published on that day.  *Id.*  Plaintiffs have

done nothing to address this vulnerability in their Second Amended Complaint.  They continue

to allege that the Hamas militants themselves captured and posted their own recordings to social

media, and "[s]everal major media outlets" also "posted real-time photographs of the atrocities

being committed."  SAC ¶¶ 2-3.  The notion that The AP's news reporting substantially altered the attack that was already underway to cause foreseeable damage to Plaintiffs is fundamentally implausible, and the factual allegations in the Second Amended Complaint are far too attenuated and speculative to overcome that implausibility.  *See, e.g.*, *Owens*, 897 F.3d at 275 ("[W]hen a defendant is more than one step removed from a terrorist act or organization, plaintiffs suing under the ATA must allege some facts demonstrating a substantial connection between the defendant and terrorism."); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (social media companies "do not proximately cause everything that an individual may do after viewing" ISIS propaganda on their platforms"); *Kaplan*, 2011 WL 2314783, at **4, 7 (no proximate cause where plaintiffs did not allege any facts suggesting that Al Jazeera's "broadcasts were used by Hezbollah to better target their rockets," or "that Hezbollah viewed [Al Jazeera's] broadcasts (rather than another network's broadcasts or no broadcasts at all)").[12]

Thus, Plaintiffs' failure to plead proximate cause serves as yet another basis for dismissal of Plaintiffs' direct liability claims under the federal ATA.

## III.    The Second Amended Complaint fails to state a claim under Florida's ATA (Count IV).

Plaintiffs' claim for direct liability under the Florida ATA should be dismissed as well. First, the Florida ATA defines an act of "terrorism" in a manner nearly identical to the federal ATA, Fla. Stat. § 775.30(1)(b), and the Second Amended Complaint fails to satisfy that

---

[12] Plaintiffs' ability to establish proximate cause is further undermined by the fact that they have filed four other ATA lawsuits against different defendants based on the same alleged injuries arising from the October 7 attack.  *See Gess v. BAM Trading Servs., Inc.*, No. 2:24-cv-134-ECM-CWB (M.D. Ala., filed Feb. 26, 2024); *Lavi v. UNRWA USA Nat'l Comm., Inc.*, No. 1:24-cv-312-RGA (D. Del., filed Mar. 8, 2024); *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-cv-724 (E.D. Va., filed May 1, 2024); *Weiser v. Islamic Republic of Iran*, No. 1:24-cv-3244-CJN (D.D.C., filed Nov. 17, 2024).

22

definition for the reasons discussed above.  Order at 32.  Second, like the Federal statute, 18 U.S.C. § 2333(a), the Florida ATA requires a showing of proximate cause between the defendant's actions and the plaintiff's injuries, Fla. Stat. § 772.13(1).  As previously explained, the Second Amended Complaint fails to allege that The AP proximately caused Plaintiffs' emotional distress.  For all of these reasons, the Florida ATA claim should be dismissed.

**IV.  Even if the Court were to disagree with all of the foregoing, the Second Amended Complaint nevertheless should be dismissed because The AP's journalism is protected by the First Amendment.**

This Court did not need to reach The AP's constitutional argument in dismissing the Amended Complaint because it relied on statutory grounds.  Order at 33.  Should it reach a different conclusion as to the Second Amended Complaint, however, it must determine whether Plaintiffs' statutory claims would violate the First Amendment as applied to The AP in this case.

The First Amendment "rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public, that a free press is a condition of a free society."  *Associated Press v. United States*, 326 U.S. 1, 20 (1945).  Protecting "the publication of truthful information of public concern" is one of "the core purposes of the First Amendment."  *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001).  Indeed, it is "a bedrock principle underlying the First Amendment" that courts cannot permit punishment for expression because it is deeply offensive or hurtful.  *Snyder v. Phelps*, 562 U.S. 443, 458 (2011).  The AP's publication of indisputably authentic photographs bearing witness to an attack that took the lives of over 1,200 people falls directly "[a]t the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988); *see also Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014) (recognizing First Amendment protection for photojournalism documenting alleged police misconduct).

"To provide 'breathing space' for true speech on matters of public concern," the Supreme Court has imposed a number of limits on liability arising from speech. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 778 (1986) (cleaned up). Among other things, the Court has "often insisted on protecting even some historically unprotected speech through the adoption of a subjective mental-state element," describing this requirement as "an important tool to prevent" self-censorship. *Counterman v. Colorado*, 600 U.S. 66, 73, 75 (2023).

For example, the Court has held that the "First Amendment precludes punishment, whether civil or criminal," for advocacy of violence or law violation "unless the speaker's words were intended (not just likely) to produce imminent disorder." *Id.* at 76 (cleaned up). The Court has also held that false statements about public officials and public figures cannot give rise to liability "without clear and convincing proof" that the speaker "actually had a high degree of awareness of probable falsity," a subjective standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659, 688 (1989) (cleaned up); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). A failure to investigate or reliance on "tainted or troubled sources" is not sufficient to demonstrate such awareness. *Talley v. Time, Inc.*, 923 F.3d 878, 896, 903 (10th Cir. 2019); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

In addition, the Court has held that a news organization cannot be punished for publishing truthful documents relating to a matter of public concern, even if it *knows* the source of the documents obtained them illegally, so long as it did not participate in the illegality. *Bartnicki*, 532 U.S. at 535. Again, this rule is rooted in "our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* at 534 (cleaned up).

24

The Court has further recognized that "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Buckley v. Valeo*, 424 U.S. 1, 19 (1976).  Restricting such expenditures "necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Id.*  Accordingly, payments made in furtherance of speech are themselves protected by the First Amendment. *Id.* at 39-51 (striking down independent expenditure limitation in campaign finance law on First Amendment grounds); *see also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1255-56 (11th Cir. 2021) (holding that choosing which charities should receive donations is protected speech).

Most relevant to this case, the Court held in *Holder v. Humanitarian Law Project* that the federal ATA is subject to "rigorous scrutiny" when applied to conduct that "consists of communicating a message." 561 U.S. at 28.  The Court concluded that the statute was constitutionally applied in that case to plaintiffs who wanted to provide training, advice, services, and personnel to terrorist groups. *Id.* at 33-39.  It emphasized, however, that the federal ATA places no "restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." *Id.* at 36.  The Court also made clear that it "in no way" meant to "suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations." *Id.* at 39; *see also Counterman*, 600 U.S. at 81 (observing that the need for a demanding mental-state requirement is particularly strong when the type of speech at issue is "a hair's-breadth away from political advocacy").

Thus, even if Plaintiffs could prove their factual allegations, the foregoing cases establish that The AP cannot be held liable simply for publishing accurate photos on a matter of

significant public concern, regardless of the photos' source, any potential benefit to Hamas, and any offense that the subject matter may provoke.  The AP also cannot be held liable based on the fact that it paid the Freelance Photographers for the use of the photos they took, at least absent a showing of subjective awareness that the Freelance Photographers were affiliates of Hamas and that any payments would benefit Hamas.  Under these principles, The AP's journalism is fully protected by the First Amendment, and Plaintiffs' claims should be dismissed on that basis.

## CONCLUSION

For the foregoing reasons, The AP respectfully requests that the Second Amended Complaint be dismissed for failure to state a claim with prejudice.[13]

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), The AP requests that the Court set a hearing on this motion.  A hearing would permit the parties to address the complexities of Plaintiffs' claims under the Federal and State Anti-Terrorism Acts as well as the significant First Amendment interests at stake in this case.  The AP estimates that the time required for argument would be one hour.

Date: January 28, 2025                           Respectfully submitted,

                                                 BALLARD SPAHR LLP

                                                 By:   */s/ Charles D. Tobin*
                                                       Charles D. Tobin (Fla. Bar No. 816345)
                                                       1909 K Street, NW, 12th Floor
                                                       Washington, DC 20006
                                                       Telephone: (202) 661-2200
                                                       Fax: (202) 661-2299
                                                       tobinc@ballardspahr.com

---

[13] This brief conforms to the Court's January 27, 2025 Order (ECF No. 108) granting The AP's request to exceed the 20-page limit for its Memorandum of Law by 6 pages, for a total of 26 pages not including the items excluded in Local Rule 7.1(c)(2).

R. Stephen Stigall (*pro hac vice*)
Elizabeth Seidlin-Bernstein (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
stigalls@ballardspahr.com
seidline@ballardspahr.com

*Attorneys for Defendant The Associated Press*

27