UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:24-cv-20684-KMM

NOACH NEWMAN, ADIN GESS, and
NATALIE SANANDAJI,

    Plaintiffs,

v.

THE ASSOCIATED PRESS,

    Defendant.

_____/

**DEFENDANT'S REPLY IN FURTHER SUPPORT
OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

The AP respectfully submits this Reply in further support of its Motion to Dismiss the Second Amended Complaint under Rule 12(b)(6) ("Mot.," ECF No. 109).[1]

From the start, Plaintiffs have used this case as a vehicle to impugn The AP's independent journalism by making outrageous and unfounded claims about its alleged responsibility for the October 7 attack on Israel, even as they filed at least four other ATA lawsuits against different defendants around the country based on the same injuries. *See* Mot. at 22 n.12.  Now, perhaps recognizing that their third attempt at pleading ATA claims against The AP is unlikely to succeed, Plaintiffs use their Opposition ("Opp.," ECF No. 121) to level even more extreme accusations against The AP and the Freelance Photographers that do nothing to demonstrate why the SAC should survive the motion to dismiss.

"Terrorism is an emotionally and politically charged issue, but the ATA ultimately is a tort statute," *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390 (7th Cir. 2018), for which Plaintiffs must plausibly plead each and every element.  There is no longer any room for

---

[1] Unless otherwise stated, The AP uses the same defined terms as used in its Motion.

speculation about what evidence Plaintiffs might turn up in discovery, as The AP had already completed its document production when Plaintiffs filed the SAC. Plaintiffs have had more than a full and fair opportunity to attempt to state a claim against The AP, and the SAC still comes up short. The Court should put an end to their misdirected effort to pin blame on The AP for the tragedy of October 7 and dismiss this case with prejudice.

I.  **Plaintiffs mischaracterize their own allegations and the exhibits to the SAC.**

Throughout the Opposition, Plaintiffs make inflammatory statements about The AP and the Freelance Photographers "that go beyond the four corners of the [SAC] and its attached exhibits." *FAI rent-a-jet GmbH v. Covac Glob. Holdings, Inc.*, 2024 WL 4564774, at *1 n.1 (S.D. Fla. July 22, 2024). They falsely suggest that the Freelance Photographers recorded Hamas militants during the "rape of Israeli girls and torture of Israeli babies." Opp. at 6. They baselessly claim that The AP paid the Freelance Photographers as a "reward" for their alleged acts of terrorism. Opp. at 14. They even argue, without any evidence, that ███████████ ███████████████████████████████████ Opp. at 8. None of this specious and offensive rhetoric is supported by the allegations in the SAC, and the Court should not credit it in deciding this Motion. *See FAI*, 2024 WL 4564774, at *1 n.1 ("The law is clear that a plaintiff may not insert new allegations or claims by way of a brief in opposition to a motion to dismiss.").

Plaintiffs also grossly misrepresent the content of the new exhibits to the SAC and provide self-serving interpretations of documents they neither authored nor received. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."). They claim, for example, that "the SAC incorporates four pivotal exhibits which establish that the AP knew the photographers in question were members of Hamas." Opp. at 1.

2

In reality, two of the new exhibits have no bearing on the Freelance Photographers' supposed ties to Hamas or The AP's alleged knowledge of those ties. *See* SAC ¶¶ 50, 53 & Exs. A, D.  The other two exhibits relate to ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ *See id.* Exs. B-C; Mot. at 11-12.

Plaintiffs further contend that ████████████████████████████ ██████████████ Opp. at 10 (citing SAC Ex. D), but the exhibit on which they rely ████████████████████████████████████ *See* Mot. at 10. ████████████████████████████ ████████████████████████████████████████ ██████████████████████████ *See* SAC Ex. D at 9 ████████████████ ████████████████████████████████████████ ████████████████████ Similarly, Plaintiffs assert that "the evidence demonstrates that Eslaiah had been working with the AP for such an extended period, and with such frequency, that he was considered a 'full-time' employee." Opp. at 1; *see also id.* at 10 (citing SAC Ex. A).  Yet they fail to acknowledge that the communication on which they rely occurred weeks *after* October 7, did not reference Eslaiah's work with The AP prior to the attack, and confirmed that Eslaiah was only a freelancer.  Mot. at 9-10.

Plaintiffs also twist former AP editor Matti Friedman's critiques of the Western media's coverage of Israel into a purported admission that The AP knowingly served "as a key component of Hamas' propaganda machine." Opp. at 1; *see also* Mot. at 6.  And they refer to the Burns Report attached to the SAC as if it addressed facts specific to this case, Opp. at 2, 10,

3

16, although the report does nothing of the sort. Indeed, the report fails to mention the Freelance Photographers or The AP at all. *See generally* SAC Ex. Q. Instead, the report's only discussion of media outlets in connection with the October 7 attack refers to completely unrelated accusations against Al Jazeera and Gaza Now. *Id.* at 14 & nn. 78-80. The Burns report does not present any facts or conclusions germane to the issues raised in The AP's Motion, and Plaintiffs have no answer to The AP's argument that the entire report should be stricken from the SAC. Mot. at 13 n. 9.

**II.     The SAC fails to state a claim for aiding and abetting.**

*General awareness.* As explained more fully in the Motion, Plaintiffs have failed to plausibly plead that The AP was "generally aware" it was "assuming a role in terrorist activities" by purchasing and publishing images taken by the Freelance Photographers. *See* Mot. at 9-15. In the Opposition, Plaintiffs first assert that The AP "knew" the Freelance Photographers "were members of Hamas," Opp. at 5-6, relying on their conclusory allegations of knowledge, SAC ¶¶ 8-10, 14-15, 55, 59, 63, 102, and The AP's 2018 communications with CAMERA, *id.* ¶¶ 51-52, 58. This Court is not required to credit the SAC's "naked assertion[s]" about The AP's state of mind, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 686 (2009), and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see* Mot. at 11-12.

Plaintiffs next assert that The AP knew the Freelance Photographers "were unlawfully in Israel" on October 7, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 6. But Plaintiffs do not accuse The AP of aiding and abetting trespass or a violation of travel restrictions; they accuse The AP of aiding and abetting "an act of international terrorism." 18 U.S.C. § 2333(d)(2). The SAC is devoid of factual allegations that would show the Freelance Photographers themselves participated in the violence and kidnapping perpetrated by Hamas on

4

that day, or that anyone at The AP believed they would (or did) take part in the attack. Plaintiffs cite no authority to support the notion that breaching a border to *record* acts of terrorism is equivalent to committing those acts of terrorism under the ATA and JASTA. Plaintiffs have not plausibly alleged that the Freelance Photographers "were so closely intertwined with Hamas's violent terrorist activities that one can reasonably infer that" The AP "was generally aware" when it purchased and published their photographs "that it was playing a role in unlawful activities from which Hamas's attacks were foreseeable." *See Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021) (cleaned up).

***Knowing and substantial assistance.*** Plaintiffs have also failed to plausibly allege that The AP knowingly and substantially assisted Hamas in carrying out the October 7 attack. Mot. at 14-18. In the Opposition, Plaintiffs lean heavily on their new theory that The AP *knew* the Freelance Photographers were themselves "members" of Hamas. *See, e.g.*, Opp. at 2-3, 11, 14. As The AP has already demonstrated, the SAC contains no factual allegations to justify this claim. *See* Mot. at 15; *supra* at 2-3. Without establishing The AP's knowledge that its payments in exchange for photographs would go directly to Hamas, The AP's alleged relationship with the Photographers was indeed no different than that of a customer purchasing "groceries from a shopkeeper who just so happens to sympathize with Hamas." Opp. at 2; *see also, e.g.*, *Jan v. People Media Project*, 2025 WL 359009, at *8 (W.D. Wash. Jan. 31, 2025) (dismissing aiding and abetting claim against media organization by victim of October 7 attack, explaining that "compensating [an accused terrorist] for writing articles" did not equate to giving him "money for the purpose of committing terrorism or aiding Hamas"). It is also profoundly implausible that The AP would knowingly put its own Israeli journalists at risk of a terrorist attack.

5

Notably, only payments made for photographs prior to the October 7 attack could have helped to finance the attack. *See* SAC ¶ 103 (alleging that Freelance Photographers were "powered with past funding by the AP" on October 7). There is no factual allegation in the SAC that the Freelance Photographers received payments for their October 7 photographs on the day of the attack, nor could there be given the documents already produced in discovery. Even if the Photographers had received the payments while the attack was still unfolding, Plaintiffs offer no explanation for how same-day payments could have furthered the attack. Thus, it is The AP's state of mind prior to the attack that is relevant. The SAC does not come close to pleading that the attack was "a foreseeable risk" of The AP's past purchase of photographs from the Freelance Photographers. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 496 (2023).

As for the "propaganda services" The AP allegedly provided to Hamas, Opp. at 11, Plaintiffs still have not articulated how the undisputedly accurate photographs The AP published on October 7 furthered the attack as it happened. *See* Mot. at 13. To state a claim under this on this novel theory, Plaintiffs must do more than point out that Hamas seeks to influence public opinion through the media, Opp. at 14, and that JASTA does not explicitly exclude propaganda as a form of "substantial assistance," *id.* at 11. Unlike money, photographs are not "fungible," *id.* – a truthful photograph of a horrific terrorist attack is not the same as a propaganda image "glorifying the attack." *Id.* at 10. The AP did not knowingly give Hamas "substantial assistance" when it exercised its independent editorial judgment to inform the world about Hamas's actions on October 7.[2] *See Kaplan v. Al Jazeera*, 2011 WL 2314783, at *8 (S.D.N.Y.

---

[2] In one of their other ATA lawsuits, Plaintiffs even admitted (in an effort to distinguish the facts of this case) that The AP has not "consciously and selectively chose[n] to promote content provided by a particular terrorist group." *See* Pls.' Resp. to Def. AMP's Praecipe with Supp. Auth. at 3, *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-cv-00724-RDA-IDD (E.D. Va. filed Jan. 24, 2025) (ECF No. 133).

June 7, 2011) (dismissing aiding and abetting claim where plaintiffs failed to plead facts plausibly suggesting news organization knew or intended that its broadcast of Hezbollah rocket attacks would be used to support terrorism).

### III. The SAC fails to state a claim for direct liability.

*Act of international terrorism.* Plaintiffs ask this Court to reconsider its well-reasoned prior ruling that The AP's purchase and publication of photographs does not "appear to be intended . . . to intimidate or coerce a civilian population" within the meaning of 18 U.S.C. § 2331(1)(B). Order at 25; Opp. at 14-17.

Plaintiffs first attempt to distinguish *Kaplan*, on which this Court relied, by noting that the plaintiffs in that case had "offered no facts" to suggest that broadcasting news of rocket attacks "would in all likelihood assist the organization in accomplishing its violent goals." Opp. at 16 (quoting *Kaplan*, 2011 WL 2314783, at *6). They argue that in this case, "The AP knew that by publishing these photos it would exacerbate Hamas's terrorist activities, influencing millions online." *Id.* But Plaintiffs do not point to any allegations in the SAC to support this assertion – they only cite the Burns Report, which does not address The AP's knowledge or intent at all. *See* SAC Ex. Q; *supra* at 3-4.

Plaintiffs also express their disagreement with the Court's decision not to apply the standard set forth in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 694 (7th Cir. 2008), Opp. at 16-17, which this Court soundly rejected because of its potential to impose "sweeping liability" that would pose "a genuine threat to First Amendment freedoms." Order at 24-26. Plaintiffs' analogy between newsworthy photographs and a "rocket launcher" only serves to illustrate the Court's point. Opp. at 17.

*Scienter.* Plaintiffs' continued reliance on *Boim* in an effort to meet the scienter requirement of their claim for direct liability under Section 2339A also fails. Opp. at 18. Unlike

7

in *Boim*, where the defendants all made direct or indirect donations to Hamas, 549 F.3d at 688, The AP paid money in exchange for photographs. As this Court observed, a "donation connotes an act of support, whereas payment in exchange for a product is more akin to an arms-length transaction." Order at 25. Because The AP received a benefit from the exchange (*i.e.*, the ability to publish newsworthy images) independent of any alleged benefit to Hamas, there is no basis to conclude that The AP had the "specific intent to aid or encourage a particular terrorist attack." Order at 26 (cleaned up); *see also Boim*, 549 F.3d at 695 (recognizing that the "social utility of the activity" is relevant to assessing defendant's mental state); Mot. at 19-20.

Plaintiffs raise no new arguments with respect to the scienter requirement under Section 2339B, instead falling back on their conclusory allegations that The AP knew the Freelance Photographers "were a part of Hamas." Opp. at 18-19; *see also* Mot. at 20-21. This Court has already held that The AP's "potential notice of the Freelance Photographers' relationship to Hamas falls short of the sort of knowledge that the Freelance Photographers themselves" engaged in terrorist activity. Order at 30. Nothing in the SAC should alter that conclusion.

***Proximate cause.*** As for the proximate cause requirement for direct liability under the ATA, Plaintiffs again cite to the SAC's conclusory allegations and argue that the issue is one for the jury. Opp. at 19-20. But courts routinely dismiss ATA claims at the pleading stage when plaintiffs fail to plead sufficient facts to show proximate cause. *See* Mot. at 22 (collecting cases); *see also, e.g., Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 678 (D.C. Cir. 2023) (no proximate cause where plaintiffs "failed to make any non-conclusory allegations that funds from [bank] were actually transferred to al-Qaeda and aided in the bombings or that the funds were necessary for Sudan to fund the attacks by al-Qaeda"); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting conclusory allegations that provision of "routine banking services"

to customers affiliated with al-Qaeda "proximately caused the September 11, 2001 attacks or plaintiffs' injuries").

### IV. The First Amendment bars Plaintiffs' claims.

Plaintiffs' response to The AP's First Amendment argument is fundamentally contradictory: They insist that they do not seek to hold The AP liable for its "ideas and opinions on matters of public interest and concern." Opp. at 21 (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). At the same time, they base their claims not only on The AP's alleged payments to the Freelance Photographers, but also on the notion that The AP contributed to the October 7 attack by publishing "propaganda of Hamas's terrorism." *Id.* at 25. A complaint about the publication of terrorist propaganda is necessarily about the content of the speech. If The AP had paid the same Freelance Photographers for images that were entirely unrelated to Hamas – say, scenes from a busy marketplace – surely Plaintiffs would not argue that The AP provided a "propaganda platform" for Hamas. Opp. at 20. The content of the photographs is thus central to Plaintiffs' claims, and that content is protected by the First Amendment.

Plaintiffs' assertion that "the First Amendment is not a defense to ATA claims," Opp. at 23, plainly is incorrect. In its only decision addressing the First Amendment implications of the ATA, *Holder v. Humanitarian Law Project*, the Supreme Court strongly suggested that "independent speech" – even speech that "benefits foreign terrorist organizations" – would be constitutionally protected. 561 U.S. 1, 39 (2010). Because this case involves The AP's independent speech, *i.e.*, its editorial decision to purchase and publish photographs, there is no avoiding a First Amendment inquiry now, at the pleading phase, or if the Court denies this motion and the case proceeds. The Supreme Court's extensive First Amendment jurisprudence protecting speech on matters of public concern and the expenditure of money to communicate

9

ideas – even though they are not ATA cases – will always provide the guardrails for imposing liability on news organizations for their reporting. Opp. at 23 n.2.

Plaintiffs argue in the alternative that The AP's publication of photographs falls into the recognized First Amendment exception for incitement, Opp. at 23-24, but this theory also misses the mark. As the Supreme Court recently reiterated, "the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman v. Colorado*, 600 U.S. 66, 76 (2023). None of the factual allegations in the Amended Complaint suggests that The AP *intended* to produce imminent disorder by publishing photographs of the October 7 attack. *See Jan*, 2025 WL 359009, at *11 (publication of articles by accused terrorist that "unfairly characterize or falsely report Israel's military actions" did "not cross the line from protected speech to inciting or preparing for unlawful activity").

Plaintiffs erroneously argue that *Bartnicki v. Vopper*, 532 U.S. 514 (2001), actually supports their position because it permits punishment of journalists who participate in their sources' illegal conduct, and "Plaintiffs pled that the AP participated in the illegal acts" by providing material support for terrorism. Opp. at 24-25. *Bartnicki* involved wiretap laws that prohibited the publication of surreptitiously recorded communications. 532 U.S. at 519-24. The Court held that those laws, despite their facial applicability to the media defendants' conduct, could not constitutionally be applied because the defendants had not taken part in the underlying crime of surreptitious recording. *Id.* at 527-35. Similarly, in this case Plaintiffs seek to hold The AP liable based on its alleged ATA violations, but there is no allegation that The AP itself engaged in the underlying crime of terrorism. Under these circumstances, even if The AP technically violated the ATA, imposing liability on The AP would be unconstitutional.

10

|  |  |
|---|---|
| Date: March 7, 2025 | Respectfully submitted,<br><br>BALLARD SPAHR LLP<br><br>By: */s/ Charles D. Tobin*<br>　　Charles D. Tobin (Fla. Bar No. 816345)<br>　　1909 K Street, NW, 12th Floor<br>　　Washington, DC 20006<br>　　Telephone: (202) 661-2200<br>　　Fax: (202) 661-2299<br>　　tobinc@ballardspahr.com<br><br>　　R. Stephen Stigall (*pro hac vice*)<br>　　Elizabeth Seidlin-Bernstein (*pro hac vice*)<br>　　1735 Market Street, 51st Floor<br>　　Philadelphia, PA 19103<br>　　Telephone: (215) 665-8500<br>　　Fax: (215) 864-8999<br>　　stigalls@ballardspahr.com<br>　　seidline@ballardspahr.com<br><br>　　*Attorneys for Defendant The Associated Press* |