UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20684-MOORE/Elfenbein

**NOACH NEWMAN**, *et al.*,

    Plaintiffs,

v.

**THE ASSOCIATED PRESS**,

    Defendant.
_____/

## ORDER ON MOTION TO REMOVE CONFIDENTIALITY DESIGNATIONS

**THIS CAUSE** is before the Court on the Plaintiffs Noach Newman, Adin Gess, Maya Parizer, Natalie Sanandaji, and Yoni Diller's Notice of Hearing, ECF No. [115], in which they notified the Court of the following discovery disputes to be addressed at the Discovery Hearing held on February 20, 2025 (the "Hearing"):

    1.    Defendant The Associated Press's (the "AP") confidentiality designation to the top five (5) emails in the thread of emails attached to Plaintiffs' Second Amended Complaint ("SAC") as Exhibit B. Specifically, the AP's internal communications at the top of the page bates stamped AP_0000965.

    2.    The AP's confidentiality designation to the top three (3) emails in the thread of emails attached to Plaintiffs' SAC as Exhibit C. Specifically, AP's internal communications at the top of the pages bates stamped AP_0002019.

    3.    The AP's confidentiality designation to the document bates stamped AP_0003600 – AP_0003614, and attached to Plaintiffs' SAC as Exhibit D.

    4.    References in the SAC to the items described above in paragraphs 1-3.

ECF No. [115] at 1-2. After hearing oral argument on the matter, the Court took these issues under advisement to more carefully consider the relevant case law before ruling on the matter.

CASE NO. 24-CV-20684-MOORE/Elfenbein

I.  **BACKGROUND**

By way of background, earlier in this litigation, this Court entered a Protective Order intended "to prevent or limit disclosure of confidential, proprietary, or private information and documents that have been or may be exchanged or produced in the case." ECF No. [66] at 1.  As the Court explained, the Protective Order "does not confer blanket protections on all disclosures, and the protection it affords extends only to the limited information or documents that are entitled to confidential treatment under applicable legal principles." *Id.*  The Protective Order allows the Parties to designate the following categories of discovery materials as "Confidential": "(a) information protected from disclosure by any state or federal law, rule, or regulation (such as the Health Insurance Portability and Accountability Act of 1996 ('HIPAA'));" "(b) information that is proprietary, trade secret, or commercially or competitively sensitive information;" "(c) unpublished newsgathering information;" "(d) information that could put individuals at risk of physical harm;" and "(e) information concerning Plaintiffs . . . or other individuals that is of a private or personal nature including but not limited to home addresses, email addresses, phone numbers, dates of birth, and social security numbers." *Id.* at 2.  Relevant to the discussion here, within the Protective Order, a procedure exists by which "[a]ny Party may challenge a designation of confidentiality at any time." *Id.* at 8.  After giving written notice to the Party designating the material as confidential and after unsuccessfully attempting to resolve the issue on an informal basis, "the Party challenging the designation may request an order removing the designation from the Court." *Id.*  At such a proceeding, the Party designating the material confidential, in this case the Defendant, "bears the burden of persuasion demonstrating that the designation of 'CONFIDENTIAL' is appropriate under th[e Protective] Order." *Id.*

CASE NO. 24-CV-20684-MOORE/Elfenbein

At the Hearing, Plaintiffs made an Oral Motion to Remove Confidentiality Designations, ECF No. [135], as to the following documents: (1) the top five emails in the thread of emails attached to Plaintiffs' SAC as Exhibit B, bates stamped as AP_0000965; (2) the top three emails in the thread of emails attached to Plaintiffs' SAC as Exhibit C, bates stamped as AP_0002019; (3) the text message communications attached to Plaintiffs' SAC as Exhibit D, bates stamped as AP_0003600 – AP_0003614; and (2) all references in the SAC to the items described above. Because of Defendant's "Confidential" designation of these materials, Plaintiffs filed a redacted version of the SAC in the public record, *see* ECF No. [99], and an unredacted version along with all exhibits, including Exhibits B, C, and D, under seal, *see* ECF No. [105]. Plaintiffs now ask the Court to remove the confidentiality designation over these materials so that the SAC in its entirety and its attachments can form part of the public record. Defendant, for its part, opposes the request on the grounds that Exhibits B and C were properly designated as "Confidential" under the terms of the Protective Order as unpublished news-gathering information and commercially sensitive information, and Exhibits B, C, and D were also properly designated as "Confidential" due to concerns that public release of such information may put its employees at risk of harm.

## II.     LEGAL STANDARDS

"Unless otherwise provided by law, Court rule, or Court order, proceedings in the United States District Court are public and Court filings are matters of public record." S.D. Fla. L.R. 5.4(a). Courts "have discretion to determine which portions of the record should be placed under seal, but our discretion is guided by the presumption of public access to judicial documents." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013). "The right of the public to access judicial records is grounded in the common-law right of access." *Id.* "The common-law right of access to judicial proceedings, an essential component of our system of justice, is

3

instrumental in securing the integrity of the process." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).

"What transpires in the court room is public property, and both judicial proceedings and judicial records are presumptively available to the public." *Perez-Guerrero*, 717 F.3d at 1235 (citations and quotation marks omitted); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."). "Judges deliberate in private but issue public decisions after public arguments based on public records. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Perez-Guerrero*, 717 F.3d at 1235 (alteration adopted; quotation marks omitted).

"Although there is some disagreement about where precisely the line should be drawn, when applying the common-law right of access federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter." *Chi. Trib. Co.*, 263 F.3d at 1311 (footnote omitted). "Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). "A motion that is presented to the court to invoke its powers or affect its decisions, whether or not characterized as dispositive, is subject to the public right of access." *Id.* at 1246 (quotation marks omitted).

### III. DISCUSSION

Following extensive oral argument and the Court's review of Exhibits B, C, and D and the authorities provided by the Parties, the Court agrees with Plaintiffs that the confidentiality

designations at issue are overbroad in their current form when viewed in light of the relevant case law.  To recap, the SAC's allegations are essentially that: (1) Defendant contracted with freelance photographers they knew to be Hamas affiliates; (2) Defendant knew of their freelance photographers' affiliation with Hamas; (3) despite the freelance photographer's known affiliations with Hamas, Defendant continued to patronize the freelancers' work; and (4) Defendant's continued patronization amounted to indirect, but nonetheless illegal, funding of Hamas — a Foreign Terrorist Organization.  *See* ECF [99] at ¶¶ 7-16.

Having reviewed the communications at issue, the Court finds they are relevant to the allegations in the SAC and could factor into the Honorable K. Michael Moore's resolution of Defendant's pending Motion to Dismiss the SAC.  *See generally* ECF No. [109].  Due to the salience of these communications, the applicable law suggests that they must be disclosed in the public record.  *See Romero*, 480 F.3d at 1245-46; *see also Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1260 (S.D. Fla. 2019) (explaining that "refusing public access would impair public understanding of judicial decision-making").  However, as Defendant points out, "[t]he common law right of access may be overcome by a showing of good cause[.]" *Romero*, 480 F.3d at 1245-46. Defendant argues that good cause exists to keep the communications at issue here from public access because (1) Exhibits B and C are protected under the reporter's privilege and as commercially sensitive information, and (2) public disclosure of Exhibits B, C, and D could endanger the safety and wellbeing of its employees and affiliates.

Generally speaking, the journalist's privilege (otherwise known as the reporter's privilege, newsman's privilege, press privilege, or unpublished news-gathering privilege) is a "reporter's protection, under constitutional or statutory law, from being compelled to testify about confidential information or sources."  PRIVILEGE, Black's Law Dictionary (12th ed. 2024).  The Eleventh

5

Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts. This privilege shields reporters in both criminal and civil proceedings." *See Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, No. 23-CV-61256, 2024 WL 4826040, at *1 (S.D. Fla. Nov. 19, 2024) (quoting *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013)). "The 'privilege applies whether the professional news gathering efforts and results are published or not'" and "stems from the adverse effect of forcing journalists to testify in judicial proceedings about the substance of their news reports." *Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, at *3 (S.D. Fla. May 28, 2015).

While the communications at issue in Exhibits B and C do not involve exchanges with confidential informants, Defendant argues that the information is nonetheless confidential because it is part of the editorial process and thus falls within the ambit of the news-gathering privilege. To support this position, Defendant cites *United States v. Fountain View Apartments, Inc.*, No. 08-CV-891, 2009 WL 1905046 (M.D. Fla. July 1, 2009) and *Montgomery v. Risen*, 197 F. Supp. 3d 219, 229 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017). However, the Court finds that these two cases fail to support Defendant's contention. While the courts in these two cases extended the news-gathering privilege to cover a publication's internal emails, the communications related to the actual reporter's notes, drafts, and emails with his editors about the investigation (*Fountain View Apartments*) or to communications involving the editing of a specific book publication (*Montgomery*). *See Fountain View Apartments, Inc.*, 2009 WL 1905046, at *3 (explaining that the subpoena served on the news organization sought "the reporter's notes and internal emails with editors and/or drafts of the investigation scripts"); *Montgomery*, 197 F. Supp. 3d at 265 (finding that the communications "contain[ed] sensitive editorial information" as the editor "raised

concerns that several of the chapters might not work in concert to advance a central thesis, and suggested that additional chapters might be written to shift the book's focus"). And, in *Fountain View Apartments*, it was "undisputed" that the information sought "was gathered as part of a news story," so the district court did not address the applicability of the privilege in the first instance. 2009 WL 1905046, at *2.

Here, on the other hand, the applicability of the privilege is hotly contested, and upon review of the communications, the Court finds that it does not apply. This is because the communications at issue were not gathered as part of a news story but instead relate to the decision of whether to continue using a freelance photojournalist with alleged connections to Hamas — in other words, an employment decision — and whether or how they should respond to emails from the Committee for Accuracy in Middle East Reporting in America questioning the accuracy of Defendant's sources. *See generally* ECF No. [105-2]; ECF No. [105-3]; ECF No. [105-4]; ECF No. [105-5]. Thus, the Court finds that the news-gathering privilege does not apply to the communications at issue. Furthermore — and in light of this finding, the Court need not consider Defendant's claim that it only produced this information because it relied on the provision of the Protective Order allowing it to designate as confidential "unpublished newsgathering information" because the Court finds that Defendant mischaracterizes the communications at issue as "unpublished newsgathering information[.]"[1] ECF No. [66] at 2; *see Chicago Tribune Co.*, 263 F.3d at 1315 n.15.

---

[1] In its communication with Plaintiffs, Defendant claims that it chose to designate the communications at issue as confidential because they also contain "commercially or competitively sensitive information[.]" ECF No. [115-3] at 2. Defendant also raised this argument at the Hearing. After reviewing the communications at issue, the Court finds this assertion to be baseless as there is no indication these emails relate to the internal workings of Defendant's business or operations. And, Defendant does not provide any caselaw to support its position.

However, Defendant's safety and security argument is far more convincing. Having reviewed the report published by the Committee to Protect Journalists, the Court is concerned that reporters covering the war in Gaza may face threats of violence and legal retribution. *See* ECF No. [118] at 4-24. This credible threat to the safety of Defendant's employees and affiliates is good cause to limit the public's access to the communications at issue. *See also Wromas v. Mursch*, 2023 WL 11937923, at *1-2 (N.D. Fla. Apr. 28, 2023) (finding that the "interests of safety and security" outweighed public's right of access to summary judgment exhibit (citation omitted)). In making this determination, the Court does not ignore Plaintiff's argument that the individuals whose identity Defendant endeavors to conceal are publicly associated with Defendant. However, public association with Defendant is different than publicly associating the concealed individuals in the alleged scheme to fund Hamas through its affiliated photojournalists. But the established security concern relating to the concealed individuals does not mean the Court will allow Defendant's confidentiality designation, in its current form, to remain. Instead, the Court will allow Defendant to designate as confidential only the portions of Exhibits B, C, and D that name the individuals on the communication, including the portion of their email address that identifies their name and any other identifying information within WhatsApp messages in Exhibit D that identifies their name or phone number. To be clear, the Court finds good cause to protect any identifying information of these journalists contained within Exhibits B, C, and D.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds that allowing Defendant to make a limited confidentiality designation while allowing the public to access information that may weigh on Judge Moore's disposition of the Motion to Dismiss the SAC balances the interests of the Parties and serves the interests of justice. Accordingly, it is **ORDERED and ADJUDGED** that Plaintiff's

CASE NO. 24-CV-20684-MOORE/Elfenbein

Oral Motion to Remove Confidentiality Designations, **ECF No. [135]**, is **GRANTED in part** and **DENIED in part.**

Should Defendant elect to make confidentiality designations on Exhibits B, C, and D consistent with the terms of this Order, those redesignations are due to Plaintiffs **no later than March 28, 2025**. Given that the names of the reporters were referenced during the Hearing, the digital audio recording from the February 20, 2025 hearing will remain **UNDER SEAL** until further Order of the Court.

**DONE and ORDERED** in Chambers in Miami, Florida on March 21, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record